### HENRY STEFFENS v. JOHN W. EARL.

1. An affidavit in a proceeding to eject a tenant, (*District Court act, Rev.*, p. 1300,) in these words, "That deponent leased said premises to S. by the month, to commence on the 1st day of May last, at the monthly rent of $10," is a sufficient statement of a tenancy.
2. In monthly tenancies, a month's notice to quit is sufficient.
3. A notice must be to quit at the end of one of the recurring periods of holding, but a notice to quit on the day corresponding with the date of letting and entry is sufficient.
4. Where no time is mentioned, and no annual rent reserved in a letting, the character of the tenure, as to time, will be controlled by the intervals between the payments; monthly or weekly payments implying monthly or weekly tenancies.

On *certiorari*.

This writ brings up the proceedings to eject Henry Steffens, a tenant, brought by John W. Earl, the landlord, taken in

supposed conformity with that portion of the act constituting District Courts in certain cities in the state, which confers jurisdiction upon such courts over summary proceedings for the recovery of possession of rented premises. *District Court act,* § 123, *Pamph. L.,* 1877; *Rev., p.* 1300.

The portion of the affidavit of the landlord upon which questions are now raised, is as follows: " That in the month of April, in the year 1877, deponent leased said premises to said Steffens by the month, to commence on the 1st day of May last, at the monthly rent of $10; that, in pursuance of said agreement, said Henry Steffens entered into possession of said premises on or about the said 1st day of May, in the year 1877; that in the month of May aforesaid, said Steffens paid this deponent $10 for the rent of said premises for the month commencing on the 1st day of May and ending on the 1st day of June last; that in the month of June last, said Henry Steffens paid to the deponent the sum of $10 for the rent of said premises from the 1st day of June to the 1st day of July last; and deponent says that on the 29th day of June, A. D. 1877, he made demand and gave notice in writing to the said Henry Steffens to deliver to him the possession of the said premises, on the 1st day of August, A. D. 1877."

The court found as proven, at the trial, the following as matters of fact:

That the defendant applied to the plaintiff, on a Sunday in April, 1877, to lease to defendant the premises in Jersey City, and they orally agreed that the plaintiff should lease the premises to the defendant from May 1st, 1877, for the rent of $10 a month, payable in advance; that the defendant should pay the rent to plaintiff, and that the agreement should take effect when defendant paid the money.

That defendant, May 1st, 1877, paid to plaintiff's wife, at the residence of plaintiff, $10; received from her the key of the premises, and entered into possession of the premises and occupied them from May 1st, 1877.

That at the time of the application by the defendant to plaintiff, in April, the latter stated that he might sell the

I

premises, and in that case would require possession of them, but it was not part of the agreement between them that the term of the lease should be until the plaintiff should sell; that such statement was made as a reason why the plaintiff rented by the month. It was also, at that time, stated that defendant could leave when he chose, which statement was an expression by the parties of the effect of the lease by the month.

That on June 1st, 1877, plaintiff refused to receive the rent for June offered to him by defendant, and told defendant he, plaintiff, might sell, and defendant might have a new landlord. The plaintiff told the defendant he, the plaintiff, did not recognize him as a tenant. June 29th, 1877, plaintiff received from defendant $10, the rent for June, and, at the same time, made demand and gave notice in writing to defendant to quit the premises, and deliver possession of them to plaintiff on the 1st of August, 1877.

On the 1st of August, 1877, between the hours of five and six in the afternoon, the plaintiff, at the premises, orally demanded possession of them of defendant, and informed him, defendant, that he did not recognize him as tenant, and received from defendant, at the same time, $6 on account of the rent for July. Defendant refused to surrender possession, and continued, and still continues to occupy the premises, without consent of plaintiff.

That $4, the balance of rent for July, were sent in August by defendant to the wife of plaintiff, without the knowledge of the plaintiff.

That August 1st, 1877, was the day on which the period of a month's tenancy expired ; that the term of defendant, as tenant, expired August 1st, 1877, and he holds over and still continues in possession of the demised premises after the expiration of his term, and after demand made, and notice in writing given for delivering the possession thereof by the plaintiff, his landlord.

That the agreement made on Sunday, in April, was subsequently ratified by the parties, and that the facts which, by

the statute, authorize the removal of a tenant, are proved to the satisfaction of the court.

Judgment was rendered in favor of the landlord.

Argued at November Term, 1877, before Justices SCUDDER, DIXON and REED.

For the prosecutor, *W. J. Lyon.*

For the defendant, *R. B. Seymour.*

The opinion of the court was delivered by

REED, J.   The first objection urged against the judgment in this case is relative to the statement in the affidavit of the existence of the tenure.   The statement in the affidavit is that " deponent leased said premises to said Steffens by the month, to commence on the 1st of May last, at the monthly rent of $10."   It is said that this is merely the statement of a conclusion of law, and not a statement of such facts as will disclose to the court the existence of a tenancy, as a legal conclusion.   In support of this position, the case of *Fowler* v. *Roe,* 1 *Dutcher* 549, is adduced.   In that case, the statement in the affidavit was that the defendant was " her tenant," and held over premises "heretofore leased to him;" and it was held insufficient, because it was the claimant's conclusions from facts not disclosed.   I do not perceive in what manner this affidavit is invalidated by the rule in that case, which was merely an assertion of the general rule that in pleadings and complaints analogous thereto, upon which judicial action is to be grounded, statements of legal conclusions, without the facts upon which they are predicated, are vicious.   How does it appear that this affidavit states a mere legal conclusion, and that there are undisclosed facts?   If A says to B, " I will let you have that house by the month, for $10 a month," and B acquiesces and goes into possession, I think a statement that A leased to B by the month, at $10 a month, would sufficiently state the facts of the letting.   The legal effect of

a letting, by these words, is then determinable by the court. To require more than this would be laying down a rule more stringent than that in the case of *Brahn* v. *Jersey City Forge Co.*, 9 *Vroom* 74. I think the affidavit is, in this respect, sufficient. It is also urged that the statement in the affidavit that " the said term has expired, and the said Steffens holds over," is also a conclusion of law merely, and so insufficient. But it is not the statement of legal conclusions which invalidates the affidavit, but the absence of a statement of the facts upon which such a conclusion can be grounded. The tenancy in this case is alleged to be terminated by notice. The renting, and the notice as to terms and time, are set out fully. If they support this conclusion, its statement as a conclusion does no harm, and if the facts fail to support it, its statement affords no assistance to the claimant.

What, then, in the first place, is the character of this tenancy, in respect to time?

To support the judgment in this case, it must be a monthly letting. The defendant insists that the words employed by the claimant, in the affidavit, import a tenancy at will, or from year to year, and therefore a three months' notice was requisite to determine the tenure. The question is important from the fact that, acting upon the supposition that the tenancy was monthly, only a month's notice was attempted by the claimant. Indeed, the distinction between tenancies from year to year and tenancies for a less period, in all the cases, seems to be important only in relation to the notice by which the determination of either kind can be effected. Unless it can be shown that monthly or weekly tenancies are unknown, I do not see how it is possible to hold the tenancy described in the affidavit to be other than a monthly tenancy. That such tenancies have an existence, the cases hereafter cited will establish, and to hold that the contract here shown is a monthly letting is only giving to the words of the affidavit their literal force. Further argument would be wasted upon this point.

If a monthly tenancy, is there a sufficient notice shown?

The rule relative to notices seems to be as follows: Where

there is a lease for a certain period, the term determines without notice. *Cobb* v. *Stokes* 8 *East* 358; *Right* v. *Darby*, 1 *Term R.* 159; *Decker* v. *Adams*, 7 *Halst.* 99. In uncertain tenancies, reasonable notice was necessary, which reasonable notice had, from the time of Henry VIII., according to Lord Ellenborough, been six months. *Doe, d. Strickland,* v. *Spence,* 6 *East* 120.

This rule was applied to all uncertain tenancies in this state, whether rent was or was not reserved. *Den* v. *Drake,* 2 *Green* 523. The time was changed to three months by act of 1840, (*Pamph. L., p.* 104,) now, with a little change in the text, the twenty-seventh section of the landlord and tenant act in the revision. *Rev., p.* 575.

In cases of tenancies for periods running less than a year, the rule enunciated by the text-writers is, that the notice must be regulated by the letting, and must be equivalent to a period. *Taylor on Land. and Ten.,* § 478; *Archb. on Land. and Ten.* 87. How the rule arose is uncertain. It certainly did not have its origin in any resolution of the courts. Indeed, Baron Parke, in *Huffell* v. *Armistead,* 7 *C. & P.* 56, said that he knew of no decision holding a week's or month's notice was necessary to determine a weekly or monthly tenancy. See, also, the remarks of the judges, to the same import, in *Towne* v. *Campbell,* 3 *C. B.* 921.

It seems, however, to have very early shaped itself into a custom. The habit of giving and requiring reasonable notice, in cases of tenancies, not for a single term, but for recurring periods, which reasonable notice, when the periods were from year to year, was, according to Lord Ellenborough, very early held to be six months, was, probably by a custom equally as old, in tenancies for less periods, established as now stated by the books.

By strict relativeness, the rule of a half year's notice in tenancies from year to year, would only require a half month's or a half week's notice in cases of monthly or weekly tenancies. The briefness of the latter, and the length of the former kind of tenancies, was the probable reason why the rule was not

uniform.  Whatever the reason of the rule, it seems to have been .well grounded in the general understanding of the English people.  The cases cited by the books of authority in support of the rule already stated are merely recognitions of what was obviously a custom, and, as such, the cases would seem to have as much weight as authority as if they had expressly ruled the point.

The first is the case of *Doe, ex dem. Parry,* v. *Hazell,* 1 *Esp.* 94.  It was a case of ejectment, tried before Chief Justice Kenyon in 1794.  The full report of the case is as follows: The defendant had taken the house by the month, and a month's notice to quit had been given.  It was agreed that the notice had reference, in all cases, to the letting, and that a month's notice was sufficient to entitle the plaintiff to recover.

In *Peacock* v. *Raffun,* 6 *Esp.* 4, tried before Lord Ellenborough in 1808, the court remarked that a week's notice to quit was certainly sufficient where the holding was weekly.

In *Doe, d. Campbell,* v. *Scott,* 6 *Bing.* 362, the same rule was, in 1830, recognized by the Court of Common Pleas.  The rule was incorporated in the text of the books of authority upon this subject as the law, and may be considered as settled both in England and in this country, excepting where the matter of notice has been the subject of statutory regulation. *Prindle* v. *Anderson,* 19 *Wend.* 391; *S. C.,* 23 *Wend.* 616; *Seem* v. *McLees,* 24 *Ill.* 192; *Walker* v. *Sharpe,* 14 *Allen* 43.

The common law rule I take to be undoubted, that notice is necessary to determine a monthly or weekly renting, and that a month's or week's notice, respectively, is sufficient.

2d. It is said that the notice in this case is insufficient, because the day for quitting named in the notice was the first of August, and not the last day of July.

The point made is, that according to the statement of the affidavit, the term originally commenced on the 1st day of May, and, by the usual mode of computation, it determined on the last day of the month.  So, throughout the tenancy, the recurring periods each terminated on the last day of each month. It is, therefore, urged that the notice was given to quit on a

day subsequent to the last day of the term, and that then a new term had commenced to run, and that, therefore, the tenants holding must continue until determined by a new notice.   *Taylor on Land. and Ten.*, § 477.

It is true that the notice required to determine these tenancies must be given to quit at the end of a period.   When a term has commenced without such notice, the tenant is entitled to remain during and bound to pay for the term.

A notice given to quit, in the middle of a term, is ineffectual. *Archb. on Land. and Ten.* 86 ; *Taylor on Land. and Ten.*, § 476.   But no case has been cited which supports the position of the prosecutor, or the statement of Mr. Taylor in section four hundred and fifty-seven of his work.   The cases in the State of Massachusetts are put upon the construction of their statute concerning notices in cases of uncertain tenancy, with rent payable at designated intervals.   *Walker* v. *Sharp, supra.*

The question whether the day mentioned in the letting is to be computed or not is frequently involved in cases of suits for trespass, and in actions in which the length of a notice is in question.   In such instances, nice distinctions have been taken, relative to the language of the letting, whether the term is to commence " on," or " from," or " from the date," or " from the day of the date."   *Wilcox* v. *Wood,* 9 *Wend.* 345; *Sheets* v. *Sheldon's Lessee,* 2 *Wall.* 177 ; *Pugh* v. *Duke of Leeds, Cowper* 714.

If the notice was short by one day, in case the month's tenancy expired on the last day of July, or if an action of trespass was pending for the tenant's occupancy on the 1st day of August, the question of computation of the first day might be material.   But no case, I think, can be found which holds that a notice to quit is invalid merely because it names, as the day to quit, a day which corresponds in date with the day named in the original letting, whatever the words of the letting.

In England, the letting was usually from and to certain feast-days. and the tenant usually entered and quit on those days, and the notices to quit named that day.   In *Doe, ex*

*dem. Eyre,* v. *Lambly,* 2 *Esp.* 635, the tenant told the purchaser of the reversion that his tenancy commenced on Ladyday, and notice was given to quit on that day. No objection was raised on the ground that notice should have been given to quit on the preceding day, but it was attempted to show that the term actually commenced at another period, which was not allowed, on the ground that the tenant was estopped.

In *Kemp* v. *Derrett,* 3 *Camp.* 510, the defendant became tenant on the 29th of October, 1810. On that agreement, Lord Ellenborough held it to be a tenancy from three months to three months, and said that, therefore, a notice expiring at the end of any quarter from the time of entry would have been sufficient to determine the tenancy. He said that the notices should have expired on the 29th of January, or on the 29th of April, or on the 29th of July.

The following cases show that it was almost the uniform custom to name the day corresponding with the date of the letting and entry of the tenant, as the time for quitting, and in these cases no objection seems to have been raised to the sufficiency of the notices on that ground. *Roe* v. *Ward,* 1 *H. Black.* 97; *Doe* v. *Weller,* 7 *Term R.* 478; *Mills* v. *Goff,* 14 *M. & W.* 72; *Doe, d. Cornwall,* v. *Matthews,* 11 *C. B.* 675.

And in *Den, ex dem. Finlayson,* v. *Bayley,* 5 *C. & P.* 67, this seems to have been the idea of the court as to the notice in a weekly tenancy.

By strict computation, the term set out by the present affidavit probably terminated on the last midnight of July. I think it would be carrying the rule that a notice to quit must be made with reference to the end of the term, to an illogical and unreasonable length to hold that a notice given for the day commencing at that midnight is not a good notice. The law is ignorant of fractions of a day. The notice covers all and any period of the twenty-four hours from midnight to midnight. The very moment the tenancy expires the tenant is confronted with a direction to quit. On what process of reasoning can it be said that a new term has commenced before notice is given.

Steffens v. Earl.

There is another foundation which I think the landlord might have erected to support the validity of his notice, and that is usage.    The bulk of the letting, in cities, is in connection with houses used for that purpose only.    The constant interchange of tenants and tenements compels simultaneous moving. A strict construction of leases would often compel general movements at midnight.    Of course, nothing so absurd is conceivable in practice.    I am quite sure that a usage could be shown for the out-going tenant to remove and the incoming tenant to enter on the same day, and that day corresponding with the first day of the various terms.    Unless this usage was controlled by express words in the lease, the courts would enforce it.    *Wilcox* v. *Wood, supra.*

Without regard to this, as it was not in evidence, I think the notice was sufficient.

In the third place, it is found by the court below, as a matter of fact, that the agreement for the monthly letting was made on Sunday.    It was also found as a fact that the agreement was subsequently ratified by the parties.    No subsequent contract, relative to the terms of the letting, appears in the case.

The doctrine enunciated in the case of *Butcher* v. *Reeves*, 2 *Vroom* 224, was that no vitality could be imparted to a Sunday contract by ratification.    Whether the words spoken on Sunday could be resorted to in any event for the purpose of showing the character of the tenancy, is very questionable.

Its determination is not essential, because, upon another fact shown in the case, I think, without any reference to the original contract, a tenancy by the month arises: and that fact is, that the payment of the rent was monthly.    Where it appears that there is an annual rental reserved, and the payment is to be made by the quarter, or month, or week, then the renting is a yearly letting, without regard to the periods of payment.    But where there is no such letting, and there is no evidence but the mere fact of payment at intervals of a week or a month, the implication is that the renting is a monthly or weekly one, just as the payment is monthly or

weekly. *Peacock* v. *Raffun, supra; Anderson* v. *Prindle, supra;* 23 *Wend.* 616; *Witt* v. *Mayor, &c., of New York,* 6 *Rob.* (*N. Y.*) 441.

Upon reaching this conclusion, it follows that the proceeding below must be affirmed, with costs.