130 N.J. Super. 369 (1974)
327 A.2d 250
BARRY GARDENS, A JOINT VENTURE, MILAN ASSOCIATES, INC., PAULISON ASSOCIATES, INC., CORPORATIONS OF THE STATE OF NEW JERSEY, THE TOWER APARTMENTS, A PARTNERSHIP, PLAINTIFFS,
v.
CITY OF PASSAIC, A MUNICIPAL CORPORATION OF PASSAIC COUNTY, NEW JERSEY, AND RENT LEVELING BOARD OF THE CITY OF PASSAIC, DEFENDANTS. ANTHONY IAFELICE AND F. WILLIAM KOESTNER, A PARTNERSHIP, TRADING AS K. & I. LAUNDROMAT, PLAINTIFFS,
v.
CITY OF PASSAIC, A MUNICIPAL CORPORATION IN THE COUNTY OF PASSAIC, NEW JERSEY, AND RENT LEVELING BOARD OF THE CITY OF PASSAIC, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided September 27, 1974.
*373 Mr. Martin Klughaupt for plaintiffs Barry Gardens, Milan Associates, Inc., Paulison Associates, Inc. and The Tower Apartments.
Mr. Joseph L. Freiman for plaintiffs Anthony Iafelice and F. William Koestner.
Messrs. Leonard M. Bitterman and Joseph F. Scancarella for defendant City of Passaic.
Mr. Joseph A. Pojanowski, III for defendant Rent Levelling Board of the City of Passaic.
SCHWARTZ, L., J.C.C., Temporarily Assigned.
In these consolidated actions in lieu of prerogative writs brought by owners of apartment buildings in the City of Passaic, the validity of the rent levelling ordinance, as amended, is attacked.
Since the ordinance is presumed to be valid, Garden State Racing Ass'n v. Cherry Hill Tp., 42 N.J. 454, 464 (1964), plaintiffs bore the burden of establishing its invalidity. Their original thrust was to urge the exercise of the police power in the area of rent stabilization was unjustified by reason of the absence of an emergency in available public housing accommodations in the city.
Plaintiff failed to support this contention by the presentation of affirmative evidence in this respect. On the other hand, I am satisfied from the testimony of Miss Grace Harris, who eminently qualified as a planning expert and who prepared a housing analysis in 1973, that the City of Passaic, as one of the oldest urban centers of population, has not been immune from a serious shortage of housing facilities, and *374 I find as a fact from the testimony adduced that a housing shortage of emergency proportions exists in the City of Passaic.
However, the court has concluded that this issue may no longer be considered in determining the validity of a local rent control ordinance.
According to the statistics compiled by the United States Census Bureau from the 1970 census, New Jersey contains a more numerous population (953.1 persons) per square mile than any other of the 50 states in the Union.
The urgent nature of housing unavailability in the State to accommodate its citizens was outlined by Governor Cahill on December 7, 1970 in a special message to the Legislature, A Blueprint for Housing in New Jersey, describing the housing crisis:
The current problems with which we are confronted are familiar to each one of us. Most young married couples are prohibited from purchasing a home because of existing housing prices. Huge segments of our work force, although earning more today than ever before, are confronted with the same problem. Tenants in many areas of our State are facing substantial increases in rent, many of whom can ill afford it, but are unable to find apartment vacancies elsewhere. Our senior citizens living on fixed incomes cannot continue to pay the spiralling property taxes on their homes, nor the high rental cost of an apartment, if any at all are available. These people, the young and the aged, the teacher and the mechanic, white and black, are thrifty and respectable citizens, yet they are foreclosed from decent and adequate housing at a reasonable cost in areas of their choice. The reason is obvious. There is a complete inadequacy of single and multi-family dwellings, and the law of supply and demand is raising the cost of the existing housing out of the reach of the average man. So the problem is present, and it is critical!
The economy and the housing situation throughout the State continued to deteriorate, and N.J.S.A. 2A:18-53 was amended in several respects by the Legislature in L. 1974, c. 49, including the following:
4. No landlord may evict or fail to renew any lease of any premises covered by section 2 of this act except for good cause as defined in section 2.
*375 Section 2 specifies the only "causes" permitting removal of a residential tenant by the court, such causes not including the right previously held by the landlord to secure possession after termination of a lease or to terminate a month-to-month tenancy upon a mere 30-days' notice.
The withdrawal from property owners in every municipality of the right of dispossession on the basis of a mere notice to quit or termination of leasehold, which has been a recognized incident of property ownership from the time of Henry VIII (Steffens v. Earl, 40 N.J.L. 128, 133 (Sup. Ct. 1878)), would not be constitutionally justified unless an emergent housing shortage made it almost impossible for dispossessed tenants to locate other housing accommodations. The landlord is denied the right of eviction for the purpose of self-occupancy, of selection of his tenant, and of rehabilitation of the premises.
Though unexpressed in the statute, the conclusion must be reached that the Legislature implicitly but unquestionably recognized the existence of a rental housing emergency throughout this State, and in furtherance of a public policy to relieve hardships arising from such housing unavailability it withdrew the previously acknowledged reversionary interest of landlords from the bundle of property rights held by them.
One of the "causes" for eviction under § 2, par. (f), of the statute is:
f. The person has failed to make payment after a valid notice to quit and notice of increase of said rent, providing the increase of rent is not unconscionable and complies with any and all laws or municipal ordinances governing rent increases.
The Legislature thereby recognized the power of a municipality to adopt a rent control ordinance, furnishing the occasion for its exercise of the police power to alleviate a common peril or need (Jamouneau v. Harner, 16 N.J. 500, 514 (1954)) and based upon the Legislature's implicit determination that a state of housing emergency exists in this State.
*376 The standard of compliance with "municipal ordinances governing rent increases" in the 1974 amendment is a more specific recognition of municipal power to regulate residential rents than is N.J.S.A. 40:48-2 which the Supreme Court regarded as express delegation of authority to municipalities to legislate in this field, Inganamort v. Fort Lee, 62 N.J. 521 (1973), and the statute also provides a standard that the increase of rent shall not be "unconscionable." The implication is clear that the Legislature determined the emergent state of housing was state-wide, applying to all communities, as the constitutionality of rent control regulation rests upon a critical shortage of housing. Inganamort at 527 and 546.
Statutory provisions may have implied effects. "As in the case of all kinds of communication, there are emanations of meaning from a statute beyond what is directly and obviously indicated to be its primary application." Sands, Statutes and Statutory Construction (4 ed.), § 55.02 at 381. The scope of the statute's operation may be broadened to include implied consequences.
By analogy, although covenants in a lease do not in affirmative terms express an undertaking to repair, yet the obligation to do so may arise by implication. Michaels v. Brookchester Inc., 26 N.J. 379, 390 (1958). Similarly, while the Motor Vehicle Act is a penal statute and gives no private right of action for injuries resulting from a violation, in suits based upon negligence, unobservance of the statute is regarded as negligence per se in some states (Hamblin v. Mountain States Tel. & Tel. Co., 271 F.2d 562 (10 Cir.1959)), and is a circumstance to be considered in determining if there is negligence in New Jersey. Varlaro v. Schultz, 82 N.J. Super. 142, 148 (App. Div. 1964).
The court finds no perceivable reason to differentiate between the emergent basis for and legislative consequence of rstraints against tenant removal and corresponding restraints against rent increase. We cannot presume the Legislature *377 intended to treat these subjects mentioned in the statute in an inconsistent manner.
This statute was enacted after Inganamort, supra, when state law did "not deal with the evil at hand  a housing shortage and concomitant overreaching of tenants," and subsequent to Albigese v. Jersey City, 127 N.J. Super. 101 (Law Div. 1974). It was not an issue presented to the Appellate Division which substantially affirmed the latter decision on August 7, 1974.
The statute is presumed to be valid, there being no decision contra. I am satisfied that the subject of the housing emergency has been dealt with and determined at state level and the existence or nonexistence of a local housing emergency cannot be made a fact issue in a challenge to the constitutionality of a municipal rent levelling ordinance.
The legislative history indicates that this was the intent of the Legislature in amending N.J.S.A. 2A:18-53. In the Statement appended to the statute at the time of its introduction as Assembly Bill No. 1586, the remedy sought was based upon "a critical shortage of rental housing space in New Jersey."
One may distinguish this recitation from the preamble to the State Rent Control Act of 1953, c. 216, N.J.S. 2A:42-14 (now expired), in which the Legislature laid the groundwork for local option by stating "a serious public emergency exists in certain areas in this State * * *"
The determination by a Legislature concerning public conditions (critical housing shortage) that by necessity and duty it must know, is entitled at least to great respect. Block v. Hirsh, 256 U.S. 135, 41 S.Ct. 458, 65 L.Ed. 865 (1921).
In this instance the New Jersey Legislature is deemed to have proclaimed a critical predicament and we must assume the emergency did exist state-wide, to the embarrassment of government and risk to the public health.
Plaintiffs urge that the ordinance was adopted without the presentation of evidence before the governing body to warrant the exercise of police power in this direction.
*378 At the legislative end of the spectrum of local councilmanic power, a judicial type of hearing is not required and fact-finding is inappropriate to legislative procedures. Yellow Cab Corp. v. Passaic City Council, 124 N.J. Super. 570 (Law Div. 1973).
Plaintiffs urge an arbitrary discrimination arises from the provisions of the ordinance in that all rented premises are not similarly treated in the levelling regulations since those tenants occupying premises as month-to-month tenants are not similarly affected by the regulations as those occupying under written leases, and owners of smaller rental dwellings are not under rent control.
The reasoning of Judge Larner in Albigese, supra, 127 N.J. Super. at 114 to 116, is fully applicable here, concluding with:
It does not represent an invidious discrimination and is based upon rational grounds. Although the legislation could have been made applicable to all rentals, and although other suggestions might be made for a different point of demarcation, the court has no right to interfere with the legislative discretion so long as the result comports with rationality.
The Legislature has a wide discretion in classifying objects of the law. In a classification for governmental purposes there cannot be an exact exclusion or inclusion of persons and things. Jamouneau v. Harner, 16 N.J. supra at 519.
While most municipalities which have adopted rent stabilizing ordinances have related authorized rent increases to the consumer price index for this metropolitan region, the City of Passaic posited rental increases upon a "cost of operations" standard, meaning "operational costs to landlord based on taxes, labor, fuel, utilities, contractor services, administrative expenses, insurance, parts and services and replacement costs."
Admittedly, this may provide for a smaller rental increase than under the generally accepted consumer price index *379 which has soared on the wings of uncontrolled inflation. Yet it is a more logical barometer for an increase in real estate operational costs than the general cost of living elements comprising the consumer price index, many of which are unrelated to real estate maintenance costs.
As the court said in Albigese, supra:
The mere fact that there may be other methods, even more preferable, to achieve the same end does not dictate that the method selected by this governing body is invalid. If it is not arbitrary and reasonably achieves the intended purpose with due regard to the property rights of the landlord as well as the needs of the tenants, it passes judicial muster. The court cannot supplant the local legislature's discretion with its own opinion of alternative methods of dealing with the subject matter. The municipal action is beyond judicial intrusion. [127 N.J. Super. at 118]
It must be borne in mind that this is not a price-fixing ordinance. The provisions for rent increases are superimposed upon the amount of rent initially determined by the landlord himself. A number of provisions for rental increases are made available by this ordinance which meet the charge of confiscation levelled by the challengers of the ordinance. In addition to the base rent (in effect on January 11, 1973), an increase not in excess of 7% of such rent to accommodate the cost of operations is automatically permitted.
Under the supervision of a rent levelling board, provision is also made for a tax surcharge "because of an increase of the tax levy on the real property"; for a hardship increase to "provide a return based on the true value of the real estate as determined by the municipal assessment"; for additional rental for any major capital improvement or any substantial increase in the services rendered to the tenants, not to exceed 15% of the tenant's rent then in effect, and the landlord may include therein the interest expense required to finance the improvements; initial rent decontrol is provided where 40% of the assessed value of the property is expended for major renovation.
*380 These considerations and administrative standards for rental increases satisfy constitutional requirements. Under these provisions both the public interest and the landlords' rights of property may be accommodated and fair and equitable rent return afforded. If the rent levelling board abuses its discretion, relief may be had in the courts.
In this instance plaintiffs did not exhaust the remedies provided by the ordinance. Therefore the court will not determine if the current rents or the rents they are seeking to establish are within the ambit of the ordinance.
The ordinance has been amended three times since its original adoption and plaintiffs allege conflicts have arisen in the respective provisions.
It is a well settled rule of construction where there are two possible interpretations of an ordinance, by one of which it would be valid and by the other it would be invalid, the court should adopt the construction which would uphold the validity of the regulations. Adams Newark Theatre Co. v. Newark, 22 N.J. 472, 478 (1956). The interpretive canon is that all provisions of a statute or ordinance are to be related and effect given to each, if that is reasonably possible. Jamouneau v. Harner, supra, 16 N.J. at 513.
The provisions in the ordinance enumerating grounds for eviction or dispossession are invalid because, by the District Court Act (N.J.S.A. 2A:18-53 et seq.) and the Landlord and Tenact Act (N.J.S.A. 2A:42-1 et seq.), the subject has been preempted by the State.
The provision for the extension of the ordinance for additional periods by the adoption of a resolution is invalid because a renewal of the regulations may only be legislated by ordinance. Albigese v. Jersey City, 129 N.J. Super. 567 (App. Div. 1974).
However, the validity of the balance of the ordinance is not affected by the invalidity of these provisions because they are severable, leaving the remainder of the regulations functionally self-sufficient to contain the essentials of a complete enactment. Swimming River Golf and Country Club *381 v. New Shrewsbury, 30 N.J. 132, 137 (1959). This is particularly so where, as in this instance, the governing body included a severability clause in the ordinance.
Except for these two areas, the challenges to the validity of the ordinance have not been sustained and, except as to them, judgment shall be entered in favor of defendants.