[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 141 
Certiorari was allowed by the former Supreme Court to review two ordinances of the Town of Belleville adopted on November 12, 1946, one providing that no person shall ride or lead in any manner any saddle horse on any railroad right-of-way, excepting at crossings which have in attendance regularly employed watchmen of the railroad company, and on any portion of any public highway of the Town of Belleville which is located within 50 feet of such railroad right-of-way; and the other providing for the imposition of a license fee of $250 for the conduct of a riding academy or any establishment which stables horses or ponies which are hired for use on or off the premises as saddle horses. Depositions were taken pursuant to the writs, and by stipulation both matters have been consolidated for disposition on the appeal to this court.
Plaintiffs, Nicholas and Maria C. Ricca, have been the owners since June 12, 1933, of certain lands in a rural section of Belleville lying adjacent to the southwesterly side of the Greenwood Lake Branch of the Erie Railroad. This land has no frontage on any public street or highway and lies southwesterly from the intersection of Smallwood Avenue and Lavergne Place. Smallwood Avenue is a public street one block north of the Erie Railroad right-of-way, across the tracks from plaintiffs' property; Lavergne Place runs from north to south, intersecting Smallwood Avenue, and is paved up to the southerly side of Smallwood Avenue; it then becomes a meandering sort of roadway to the northerly line of the Erie right-of-way, leading southwardly to the double-tracked railroad, then across the tracks into a private road which forms the westerly boundary of the Ricca property and the easterly boundary of premises adjoining the Ricca property on the west. The crossing over *Page 142 
the railroad at this point is a private unprotected crossing, constructed of a hard surface pavement to permit convenient and easy passage of pedestrians, vehicles and animals over it. Whistle sign posts are maintained by the railroad about 500 feet east and west of the crossing. The Riccas post a time-table of the trains on their property.
Nicholas Ricca operates a coal business on his property, and the riding academy has been conducted thereon by Anthony S. Ricca since 1938.
The adoption of both ordinances was obviously prompted by a fatal accident which occurred on May 11, 1946, to a young lady who had hired one of Ricca's saddle horses, and whose body was found later on the north side of the railroad tracks, approximately 1500 feet westerly from the crossing at Lavergne Place. There is an atmosphere of uncertainty as to how and under what circumstances her death was occasioned.
We are asked to set aside the ordinance on three grounds. They are: (1) the ordinance entitled "An Ordinance Pertaining To Saddle Horses" is arbitrary, illegal and void; (2) the licensing ordinance is arbitrary, capricious and discriminatory, and is an illegal impost in that, although adopted for regulatory purposes, provides for excessive license fees; and (3) the licensing ordinance fails to set forth a legally sufficient standard for the guidance of the licensing official. The appeal is resisted on the grounds that (1) the "Saddle Horse Ordinance" is a valid exercise of municipal police power; and (2) the licensing ordinance is a valid exercise of the taxing power or of the regulatory power of the municipality.
Our review of the proofs impels us to the conclusion that the so-called saddle horse ordinance is prohibitory and discriminatory, rather than regulatory, and for this reason cannot be sustained. Albeit, the municipality has the right to secure such ends, under the police power, for the protection of life, health, property, and for the preservation of good government and general welfare, order and security of the public(R.S. 40:48-2), such authority is limited and must conform to the requirement that the means employed in the exercise *Page 143 
of such police power have a rational relation to that end, and are free from arbitrariness. The restraints and regulations adopted for the preservation and the general good and welfare must in all respects be reasonable in nature. N.J. Good Humor,Inc., v. Bradley Beach, 124 N.J. Law 162 (E. A. 1939),11 Atl. (2d) 113. It seems to us, and we so hold, that what was done here was solely with reference to the riding academy conducted by the plaintiff, Anthony S. Ricca. It fails wholly to deal with the safety of the general public, but, as stated, imposes its interdiction only upon the use of saddle horses on railroad rights-of-way and unprotected crossings. When it is borne in mind that the public has no right-of-way over the crossing in question, it immediately becomes apparent that the prime purpose of the saddle horse ordinance was to preclude plaintiffs from continuing the riding academy. These factors definitely indicate that the Board of Commissioners, prompted by the incident of her death, sought to prevent the occurrence of future fatalities by prohibiting horseback riding on the railroad right-of-way. Although the intention may have been justifiable it follows that the means adopted are wholly arbitrary, discriminatory and unreasonable. As such, the saddle horse ordinance falls within the condemnation of Hart v. TeaneckTownship, 135 N.J. Law 174 (E. A. 1946), 50 Atl.(2d) 856, wherein the Court of Errors and Appeals held invalid an ordinance that attempted to close lunch wagons during the early hours of the morning. Mr. Justice Wachenfeld, speaking for the court, said:
"A municipal corporation is a creature of the Legislature, with no inherent jurisdiction to make laws, but is a government of enumerated powers acting by delegated authority which must be exercised in a reasonable manner. The power conferred on municipal corporations by the State Legislature is limited; its exercise must be directed to the protection of a basic interest of society and `* * * the means employed in its exercise have a rational relation to that end, and be altogether free from arbitrariness. The restraints and regulations imposed for the general good and welfare must needs have the virtue of reasonableness.' N.J. Good Humor, Inc., v. Bradley Beach,124 N.J.L. 162, 168, 11 A.2d 113, 117."
The saddle horse ordinance fails to meet the test, as repeatedly enunciated by our courts, that the regulation must be reasonable *Page 144 
and free from discrimination. The challenged ordinance fails to do so. Cf. Falco v. Atlantic City, 99 N.J. Law 19 (Sup.Ct.
1923), 122 Atl. 610 (barber shop); Wagman v. Trenton,102 N.J. Law 492 (Sup.Ct. 1926), 134 Atl. 115 (public auctions); Spiro Drug Service, Inc., v. Board of Commissionersof Union City, 130 N.J. Law 1 (Sup.Ct. 1943), 30 Atl.(2d) 892, affirmed 130 N.J. Law 496 (E. A. 1943),33 Atl. (2d) 872 (drug store); Starkey v. Atlantic City,132 N.J. Law 27 (Sup.Ct. 1944), 38 Atl. (2d) 198 (drug store); Amodio v. Board of Commissioners of West New York,133 N.J. Law 220 (Sup.Ct. 1945), 43 Atl. (2d) 889 (barber shop). Cf. Crawford's Clothes, Inc., v. Board of Commissionersof Newark, 131 N.J. Law 97 (Sup.Ct. 1943), 35 Atl.(2d) 38.
The amendment to the licensing ordinance is assailed as arbitrary, capricious, discriminatory and confiscatory. We think not. It was adopted in the exercise of the authority conferred byR.S. 40:52-1 et seq. Similar license fees have been sustained in cases involving itinerant vendors, barber schools, and concessionaires of super-markets. The defendant municipality has in effect a licensing ordinance adopted on June 30, 1931, which provides, inter alia, for the licensing of wrestling and boxing arenas at a fee of $250. We are persuaded that the volume of the riding academy business conducted by the plaintiff, Anthony S. Ricca, fully justifies the license fee imposed. In IndependentWarehouses, Inc. v. Scheele, 132 N.J. Law 390 (Sup.Ct.
1945), 40 Atl. (2d) 796; affirmed 134 N.J. Law 133 (E. A. 1946), 45 Atl. (2d) 703; affirmed 67 U.S. Sup. Ct.
1062, Justice Heher stated, inter alia:
"The quantum of the tax rests in sound discretion, guided by reason; and judicial intervention is justifiable only where there has been an abuse of the power. If the local legislative action is not clearly unreasonable or unduly oppressive or discriminatory, its policy is not a justiciable question."
Also, see Hoffman v. Borough of Neptune City,137 N.J. Law 485 (Sup.Ct. 1948), 60 Atl. (2d) 798, for a discussion by Justice Jacobs of the subject of municipal license fees.
The ordinance entitled "An Ordinance Pertaining To Saddle Horses", adopted on November 12, 1946, is set aside.
The ordinance fixing license fee is affirmed. *Page 145