JOHN F. INGANAMORT, *ET AL.*, PLAINTIFFS-APPELLANTS, v. BOROUGH OF FORT LEE, *ET AL.*, DEFENDANTS-RESPONDENTS.

FORT LEE HOMEOWNERS ASSOCIATION OPPOSED TO RENT CONTROL, PLAINTIFFS-APPELLANTS, v. BOROUGH OF FORT LEE, *ET AL.*, DEFENDANTS-RESPONDENTS.

CONTINENTAL GARDENS, INC., *ET AL.*, PLAINTIFFS-APPELLANTS, v. BOROUGH OF RIVER EDGE, *ET AL.*, DEFENDANTS-RESPONDENTS.

JUSTIN C. HARRIS AND STEPHEN SHILOWITZ, EXECUTORS, *ETC.*, PLAINTIFFS-RESPONDENTS, v. MAYOR, *ETC.*, TOWNSHIP OF NORTH BERGEN, *ET AL.*, DEFENDANTS-APPELLANTS.

Argued March 5 and 6, 1973—Decided April 4, 1973.

522

*Inganamort v. Fort Lee* (A–121): On appeal from Superior Court, Law Division, Bergen County, whose opinion is reported at 120 *N. J. Super.* 286; *Harris v. Mayor, etc.,*

*North Bergen* (A–75): On appeal from Superior Court, Law Division, Hudson County.

Mr. *Arthur J. Sills* argued the cause for appellants Inganamort, *et al.* (*Mr. Clive S. Cummis,* on the brief; *Messrs. Sills, Beck, Cummis, Radin and Tischman,* attorneys).

Mr. *Gerald E. Monaghan* argued the cause for respondents Fort Lee, *et al.* (*Mr. William V. Breslin,* on the brief; *Messrs. Breslin and Monaghan,* attorneys).

Mr. *Richard E. Blumberg* argued the cause for *amicus curiae* New Jersey Tenants' Organization (*Mr. W. Dennis Keating,* of the D. C. bar, *Mr. Allan David Heskin,* of the California bar, and *Mr. Carl S. Bisgaier,* on the brief and of counsel; *Mr. Blumberg* and *Mr. John D. Atlas,* attorneys).

Mr. *Sheppard A. Guryan* argued the cause for appellants Continental Gardens, *et al.,* and respondents *Harris, et al.* (*Messrs. Lasser, Lasser, Sarokin and Hochman,* attorneys).

Mr. *Ned J. Parsekian* argued the cause for respondent Borough of River Edge (*Mr. Melvin R. Solomon,* on the brief; *Messrs. Parsekian and Ferro,* attorneys).

Mr. *Peter M. Mocco* and *Mr. Joseph V. Cullum* argued the cause for appellants Mayor, etc., North Bergen, *et al.*

Mr. *Richard W. Kracht* argued the cause for *amici curiae* New Jersey Builders Association, *et al.* (*Messrs. Hutt and Berkow,* attorneys).

Mr. *Robert Feldman* filed a brief on behalf of plaintiff-intervenor-respondent Belfer Realty Associates (*Messrs. Wolfberg, Elgart, Schwartz, Van Sickle and Feldman,* attorneys).

The opinion of the Court was delivered by

WEINTRAUB, C. J. The single question is whether a municipality has the power to adopt a rent control ordinance. In the *Fort Lee* and *River Edge* cases the ordinances were upheld, 120 *N. J. Super.* 286 (Law Div. 1972); in the *North Bergen* case the ordinance was struck down. The decisions followed upon different readings of *Wagner v. City of Newark,* 24 *N. J.* 467 (1957). We granted certification of the appeals to the Appellate Division before consideration there.

We must assume there is a critical shortage of the housing covered by the several ordinances here involved and that tenants, trapped by the fact, are being exploited. The judgments were entered on pretrial motions in which this factual premise was not challenged. Hence we have the naked legal issue whether the police power delegated to these municipalities includes the power to deal with the evil of inordinate rent arising out of a housing shortage.

There are three constituent questions: (1) does the State Constitution prohibit delegation to municipalities of the power to control rents in a period of critical housing need; (2) if that power may be granted, has the Legislature done so; and (3) if the State statutes vesting police power in municipalities do embrace this area, is the exercise of that power by local government preempted or barred by reason of the existence of other statutes dealing with the subject matter. These are the same questions presented in *Wagner, supra,* 24 *N. J.* 467, which struck down a rent control ordinance adopted by the City of Newark.

In the *Fort Lee* and *River Edge* cases the trial court read *Wagner* to turn upon the third question, that is, the existence at that time of a State statute dealing with rent control and preempting the subject, and there being no such statute today, the court found that *Wagner* did not bar municipal legislation. In *North Bergen* the trial court read *Wagner* to hold there was no grant of power to municipalities to deal with the subject. At the argument before us, counsel could

not agree as to which of the three legal propositions was pivotal in *Wagner*.

We will consider the three questions in the stated order.

I

██ Home rule is basic in our government. It embodies the principle that the police power of the State may be invested in local government to enable local government to discharge its role as an arm or agency of the State and to meet other needs of the community. *Bergen County v. Port of New York Authority*, 32 *N. J.* 303, 312–314 (1960) ; 56 *Am. Jur.* 2d, *Municipal Corporations*, § 23, *pp.* 87–88. Whether the State alone should act or should leave the initiative and the solution to local government, rests in legislative discretion.

█ There is a limitation upon the power to delegate. As *Wagner* pointed out, some matters must be dealt with at the State level. 24 *N. J.* at 478–479. For example, the law of wills or the law of descent and distribution may not be left to local decision. Nor could the State leave it to each municipality to say what shall constitute robbery or whether it shall be punished. The reason is evident. "The needs with respect to those matters do not vary locally in their nature or intensity. Municipal action would not be useful, and indeed diverse local decisions could be mischievous or even intolerable." *Summer v. Teaneck*, 53 *N. J.* 548, 553 (1969).

██ But execpt for such subjects, the Legislature may invest in local government the police power to devise measures tailored to the local scene. The Legislature may decide to do so for sundry reasons. A problem may exist in some municipalities and be trivial or nonexistent in others. And if the evil is of statewide concern, still practical considerations may warrant different or more detailed local treatment to meet varying conditions or to achieve the ultimate goal more effectively. Thus in holding that a munici-

pality may deal with racial "blockbusting" notwithstanding the constitutional limitation upon the delegation of the police power, we said in *Summer v. Teaneck, supra,* 53 *N. J.* at 553:

> * * * Blockbusting depends very much upon the local scene and varies accordingly in its intensity and hurt. Although the evil warrants the concern of the State itself, it would not be inappropriate to permit the municipalities also to wrestle with it. There is no inevitable need for a single statewide solution or for a single statewide enforcing authority. On the contrary, it may be useful to permit municipalities to act, for, being nearer the scene, they are more likely to detect the practice and may be better situated to devise an approach to their special problems. Then, too, municipalities may provide enforcement personnel the State has not supplied in adequate numbers and hence be able to nip an offensive movement with which a State agency could not deal until after the event."

And it is of no constitutional moment that local decisions will mean diversity of treatment within the State. Diversity is an inevitable incident of home rule, for home rule exists to permit each municipality to act or not to act or to act in a way it believes will best meet the local need. *West Morris Regional Board of Education v. Sills,* 58 *N. J.* 464, 477 (1971), *cert.* denied, 404 *U. S.* 986, 92 S. Ct. 450, 30 *L. Ed.* 2d 370 (1971); *Two Guys from Harrison, Inc. v. Furman,* 32 *N. J.* 199, 231–232 (1960); *Jamouneau v. Harner,* 16 *N. J.* 500, 517–521 (1954), *cert.* denied, 349 *U. S.* 904, 75 S. Ct. 580, 99 *L. Ed.* 1241 (1955); *In re Cleveland,* 52 *N. J. L.* 188, 190–191 (E. & A. 1889); *Paul v. Gloucester County,* 50 *N. J. L.* 585, 608–609 (E. & A. 1888).

And the Legislature may invest the police power in local government in several ways. It may grant power without any restriction by way of stated standards for its exercise. *Board of Health, Weehawken v. New York Central R. R. Co.,* 4 *N. J.* 293, 300–301 (1950). This of course is the usual format. Or the Legislature may limit the grant by specifying standards as it did in the case of zoning (the Constitution itself contains some standards with respect to

delegation of that power, *Art.* IV, § 6, ¶ 2). Or the Legislature may itself fashion a detailed treatment of a subject, and leave it to local government (or to the local electorate) to choose whether the statute shall operate within its borders. See *In re Cleveland, supra,* 52 *N. J. L.* at 190. This approach was used, for example, with respect to Sunday closing in the statute involved in *Two Guys from Harrison, Inc. v. Furman, supra,* 32 *N. J.* 199, and with respect to rent control in the statute upheld in *Jamouneau v. Harner, supra,* 16 *N. J.* 500.

Whether the police power to deal with a subject should be granted without restriction or should be tethered in one way or another is for the Legislature alone to say. We know of no principle under which the judiciary may insist upon one technique rather than another with respect to any topic which may constitutionally be left to local decision. And the constitutional limitation we mentioned earlier with respect to matters which require statewide uniformity is equally applicable no matter which technique of delegation the Legislature may choose. So, for example, to refer again to the subject of wills and of descent and distribution, the doctrine which forbids the delegation to municipalities of the power to enact an ordinance upon those subjects would equally bar the Legislature from leaving it to the several municipalities to say whether the State statutes upon those subjects shall be operative within their borders.

If the foregoing views are correct, then the question whether the Legislature can leave rent control to local decision was decided in favor of the power to do so in *Jamouneau v. Harner, supra,* 16 *N. J.* 500. There the State statute by its terms became "operative in any municipality in which the governing body shall adopt a resolution reciting that there is a housing space shortage therein and that rent control is required in such municipality for the protection, safety, health and general welfare of the people of such municipality" (16 *N. J.* at 517). A parallel provision

existed for decontrol and recontrol. This Court deemed this procedure "to be an eminently practical way of covering the areas of the State in need of rent control, and thus to avoid state-wide control in excess of the need and the attendant risks of going beyond the reasonable limits of the power" (16 *N. J.* at 517).

The question whether *Wagner* held the Legislature could not constitutionally delegate to municipalities the power to deal with this subject matter arises because *Wagner* referred to the proposition that some matters, such as wills and inheritance, are exclusively for statewide legislative decision. But *Wagner* did not say the Constitution places the subject of rent control in that ambit. Rather, without stating an explicit view upon that subject, *Wagner* went on to say that "Moreover, legislative history since the inception of federal controls after the beginning of World War II shows a clear recognition that rent control was not a matter within the realm of municipal power *without express authority from the State,*" 24 *N. J.* at 479 (emphasis is ours).

The words we have just italicized repel the idea that *Wagner* meant the Legislature could not delegate to local government the power to deal with exploitation of a housing shortage. It is notable, too, that *Wagner* did not cite or distinguish or overrule *Jamouneau, supra,* 16 *N. J.* 500, which, as we have said, held that rent control may be left to local decision, there by the device of local option.

Indeed, *Wagner* stated as its final point that the City of Newark could act only under the terms of chapter 146 of the Laws of 1956. That statement involved the premise that rent control could be left to local decision. A number of municipalities, named in section 13 of that statute, Newark being one of them, had petitioned under *Art.* IV, § 7, ¶ 10, of the State Constitution for a special or local statute authorizing the adoption of an ordinance with respect to rent control. In response the Legislature enacted chapter 146 authorizing such ordinances, which statute, by its terms, was inoperative in any municipality unless the statute was

adopted by its governing body, § 18. Thus chapter 146 delegated the power to local government and *Wagner* deemed the delegation to be valid.[1]

If *Wagner* intended to say rent control may not be left to local government, *Wagner* would be singular. Cases elsewhere unanimously recognize that the power may be invested in local government. See *Huebeck v. City of Baltimore,* 205 *Md.* 203, 107 *A.* 2d 99 (Ct. App. 1954); *Teeval Co. v. Stern,* 301 *N. Y.* 346, 93 *N. E.* 2d 884 (Ct. App. 1950), *cert.* denied, 340 *U. S.* 876, 71 S. Ct. 122, 95 *L. Ed.* 637 (1950); *I. L. F. Y. Co. v. City Rent and Rehabilitation Administration,* 11 *N. Y.* 2d 480, 230 N. Y. S. 2d 986, 184 *N. E.* 2d 575 (Ct. App. 1962); *Hartley Holding Corp. v. Gabel,* 13 *N. Y.* 2d 306, 247 N. Y. S. 2d 97, 196 *N. E.* 2d 537 (Ct. App. 1963); *8200 Realty Corporation v. Lindsay,* 27 *N. Y.* 2d 124, 313 N. Y. S. 2d 733, 261 *N. E.* 2d 647 (Ct. App. 1970), appeal dismissed, 400 *U. S.* 962, 91 S. Ct. 367, 27 *L. Ed.* 2d 381 (1970); *Warren v. City of Philadelphia,* 382 *Pa.* 380, 115 *A.* 2d 218 (Sup. Ct. 1955). Decisions which concluded that the Legislature had not empowered municipalities to act did not suggest a constitutional impediment would stand in the way if the Legislature chose to do so. See *Old Colony Gardens, Inc. v. City of Stamford,* 147 *Conn.* 60, 156 *A.* 2d 515 (Sup. Ct. of Errors 1959); *Ambassador East v. City of Chicago,* 399 *Ill.* 359, 77 *N. E.* 2d 803 (Sup. Ct. 1948); *City of Miami Beach v. Fleetwood Hotel, Inc., Fla.,* 261 *So.* 2d 801 (Sup. Ct. 1972); *Tietjens v. City of St. Louis,* 359 *Mo.* 439, 222 *S. W.* 2d

---

[1] *Wagner* described chapter 146 as a "special act," as indeed it purported to be. In a later case, in which it was claimed the constitutional procedure for the enactment of a special law had not been met, it was held that chapter 146 could be sustained as a "general" law. *In re Freygang,* 46 *N. J. Super.* 14 (App. Div. 1957), affirmed, 25 *N. J.* 357 (1957). But whether chapter 146 was a special law or a general law is not significant here. The relevant fact is that chapter 146 delegated the power to local government, and *Wagner* deemed the delegation to be valid.

70 (Sup. Ct. 1949); *cf. Marshal House, Inc. v. Rent Review and Grievance Board of Brookline*, 357 Mass. 709, 260 N. E. 2d 200 (Sup. Jud. Ct. 1970). That rent control may be left with local government is an accepted proposition in 7 *McQuillin, Municipal Corporations* (3d ed. 1968), § 24.563d, pp. 613–614, and in *Rhyne, Municipal Law* (1957), p. 538. We note also that the President's Economic Stabilization Regulations (Phases I, II and III) dealing with rent controlled units expressly refer to "the laws or regulations of a State *or local government*, or an agency or instrumentality thereof" (emphasis is ours), 6 *C. F. R.* § 301.105 (1972), thus accepting local action as part of the scene.

██ ██ If there were doubt as to whether this power could constitutionally be invested in local government, it would be relevant to add that *Art.* IV, § 7, ¶ 11, provides:

"The provisions of this Constitution and of any law concerning municipal corporations formed for local government, or concerning counties, shall be liberally construed in their favor. The powers of counties and such municipal corporations shall include not only those granted in express terms but also those of necessary or fair implication, or incident to the powers expressly conferred, or essential thereto, and not inconsistent with or prohibited by this Constitution or by law."

This rule of construction reflects a need we referred to above, that local government be equipped to deal with matters of local concern which, if left to State action, might not be met expeditiously or at all. It is well to keep in mind that our legislators are elected from districts rather than at large. This is a source of strength, but it holds the weakness that a localized problem is less apt than a general one to invite prompt action at the State level. It is fitting, therefore, to take an expansive view of the powers which may constitutionally be given to local government. The Legislature of course would be free to supersede local ordinances if it thought it advisable to do so.

It is peculiarly appropriate thus to deal with rent abuse. The history of the subject tells us that the problem may call

for federal action, or State action, or local decision. That the problem may thus be general or local is evident from the process of decontrol with respect to prior emergencies wherein the federal government and then the State government and finally local government withdrew as the evil dissipated.

## II

Hence we do not doubt that municipalities may constitutionally be empowered to act in this area. The next question is whether our statutes should be read to grant that power, especially in the light of the constitutional rule of construction in *Art.* IV, § 7, ¶ 11, quoted above.

Two statutes were involved in *Wagner.* One was *N. J. S. A.* 40:69A–30 of the Optional Municipal Charter Law which reads:

The general grant of municipal power contained in this article is intended to confer the greatest power of local self-government consistent with the Constitution of this State. Any specific enumeration of municipal powers contained in this act or in any other general law shall not be construed in any way to limit the general description of power contained in this article, and any such specifically enumerated municipal powers shall be construed as in addition and supplementary to the powers conferred in general terms by this article. All grants of municipal power to municipalities governed by an optional plan under this act, whether in the form of specific enumeration or general terms, shall be liberally construed, as required by the Constitution of this State, in favor of the municipality.

If we are correct in the view we expressed in Point I that the power to deal with a rental emergency may constitutionally be given to municipalities, we see no escape from the proposition that the statute just quoted is sufficient to that end. We understand that none of the municipalities in the matters now before us are governed by the Optional Municipal Charter Law. We will in a moment refer to the general statute which relates to them. We speak of *N. J. S. A.* 40:69A–30 because it was involved in *Wagner* and that fact bears upon the question whether *Wagner* turned

on the lack of a statutory authorization or upon the final point, that the Newark ordinance conflicted with a then existing statute dealing with the specific subject of rent control. We appreciate that *Wagner* can be read to say that the subject of rent control is beyond the general grant of the quoted statute, but if so, we cannot adhere to that view. If it is accepted that the power to deal with the subject may be given to local government, we see no basis upon which the judiciary can carve out that exception from the expressed legislative intention "to confer the greatest power of local self-government consistent with the Constitution of this State."

The other statute involved in *Wagner* and involved also in the cases now before us is *N. J. S. A.* 40:48–2 which reads:

Any municipality may make, amend, repeal and enforce such other ordinances, regulations, rules and by-laws not contrary to the laws of this state or of the United States, as it may deem necessary and proper for the good government, order and protection of persons and property, and for the preservation of the public health, safety and welfare of the municipality and its inhabitants, and as may be necessary to carry into effect the powers and duties conferred and imposed by this subtitle, or by any law.

Courts have split upon whether a statute authorizing municipalities to legislate for the "general welfare" is itself a source of municipal power or merely gives auxiliary power in aid of specfic grants. See generally 56 *Am. Jur.* 2d, *Municipal Corporations,* § 432, *pp.* 477–478. If such a statute grants only auxiliary power, there of course would have to be specific authorization to deal with housing emergencies. It was upon that narrow reading of the general statutes in *Ambassador East, Inc. v. City of Chicago, supra,* 399 *Ill.* 359, 77 *N. E.* 2d 803, 807, and *Tietjens v. City of St. Louis, supra,* 359 *Mo.* 439, 222 *S. W.* 2d 70, 73, that it was found there was no municipal power to control rents in a period of shortage.

██ But we expressly rejected a narrow view of *N. J. S. A.* 40:48–2 in *Fred v. Borough of Old Tappan*, 10 *N. J.* 515 (1952). There an ordinance dealing with soil removal was assailed because no statutory grant of power spoke expressly of that subject. We held *N. J. S. A.* 40:48–2 itself warranted the ordinance, saying (*p. 520*):

> * * * This interpretation of *R. S.* 40:48–2, *N. J. S. A.*, as an express grant of general police powers to municipalities has been made impregnable by the continued legislative acquiescence therein, by the mandate of *Article IV, Section VII,* paragraph 11 of the *Constitution of* 1947 that acts concerning municipalities be liberally construed, and by the adherence thereto of the more recent judicial decisions, *Ricca v. Board of Commissioners,* 1 *N. J. Super.* 139, 142–143 (*App. Div.* 1948); *Edwards v. Borough of Moonachie,* 3 *N. J. Super.* 10, 14 (*App. Div.* 1949), reversed 3 *N. J.* 17 (1949); *Michaels v. Township Committee of Tp. of Pemberton,* 3 *N. J. Super.* 523, 527 (*Law Div.* 1949); *City of Newark v. Charles Realty Co.,* 9 *N. J. Super.* 442, 457 (*Cty. Ct.* 1950). If more be needed, we refer to the recent decision in *State v. Mundet Cork Corp., supra,* 8 *N. J.* 359, 369 (1952), wherein we held that the enactment of an air pollution ordinance was "a function of the police power conferred on municipalities by *R. S.* 40:48–2 *N. J. S. A.* (originally enacted in 1917) for the protection of the welfare of their residents."
>
> Plainly, therefore, *R. S.* 40:48–2 must be considered as an express grant of broad general police powers to municipalities. * * *

We have consistently held the statute is itself a reservoir of police power. *Adams Newark Theatre Co. v. City of Newark,* 22 *N. J.* 472 (1956), affirmed, 354 *U. S.* 931, 77 S. Ct. 1395, 1 *L. Ed.* 2d 1533 (1957); *Kennedy v. City of Newark,* 29 *N. J.* 178 (1959); *Moyant v. Paramus,* 30 *N. J.* 528 (1959); *Summer v. Teaneck, supra,* 53 *N. J.* 548; *New Jersey Builders Ass'n v. Mayor E. Brunswick Tp.,* 60 *N. J.* 222 (1972). We are satisfied that *N. J. S. A.* 40:48–2 confers upon municipalities the power to adopt rent control ordinances.

## III

The final question is whether existing statutes bar municipal exercise of the power to control rents, or perhaps

to put it in other terms, whether existing statutes bar a finding that *N. J. S. A.* 40:48–2 was intended to include the power to deal with the subject.

As we mentioned earlier, the Legislature enacted chapter 146 of the Laws of 1956 which specifically authorized rent control ordinances in the municipalities which had petitioned for a special law. The municipalities sought a statute to allay doubt as to their power to act. By its terms chapter 146 was "inoperative in any municipality until it shall be adopted by ordinance of the governing body of such municipality." *Sec.* 18. The City of Newark chose not to adopt chapter 146 because it included a mandate for an across-the-board rental increase. Instead the City relied on the statutes discussed in Point II above. *Wagner* held chapter 146 constituted a legislative declaration that the subject matter shall be dealt with under its provisions or not at all. 24 *N. J.* at 480–481.

■ There presently is no statute dealing with rent control and hence the municipal power is not preempted by any such measure. Chapter 146 expired by its terms on December 31, 1957. *Sec.* 18. Surely it cannot be that when the State withdrew from the area in the 1950s, it thereby ordained that the subject matter shall thereafter be the province of the State Legislature alone.

■ The only other facet of the preemption issue is whether the statutes dealing generally with the relationship of landlord and tenant, including statutes relating to eviction, should be found to block municipal action. We see no difficulty here. There is no repugnance in terms of policy since the general statutes do not deal with the evil at hand — a housing shortage and concomitant overreaching of tenants.

■ That control of rents affects the exercise of the right to contract with respect to property is undeniable. But the right to contract is subject to the police power and no less so when the police power is exerted at municipal level. 56 *Am. Jur.* 2d, *Municipal Corporations,* § 437, *p.* 483. Whether an ordinance relates to zoning, or contains a

housing code, or imposes upon the landlord duties relating to health, it necessarily limits the use of property or the right to contract with respect to it. That the ordinance imposes restraints which the State law does not, does not spell out a conflict between State and local law. On the contrary the absence of a statutory restraint is the very occasion for municipal initiative. The police power is vested in local government to the very end that the right of property may be restrained when it ought to be because of a sufficient local need.

The judgment in *Harris v. North Bergen* is reversed and the matter remanded for further proceedings not inconsistent herewith.

The judgments in *Inganamort v. Fort Lee* and in *Continental Gardens v. River Edge* are affirmed. In these matters counsel for plaintiffs state they did not intend to abandon other issues and assumed the judgments concluded only the issue we have dealt with. Plaintiffs may apply to the trial court for leave to pursue their other challenges.

CONFORD, P. J. A. D., Temporarily Assigned (dissenting). I would adhere to the decisions of this court in *Wagner v. Newark*, 24 *N. J.* 467, 479 (1957), and *Grofo Realty Co. v. Bayonne*, 24 *N. J.* 482, 486 (1957), that municipalities do not have power to enact rent control ordinances without express authority from the State and that the general police power provisions of the Home Rule Act, *N. J. S. A.* 40:48-2, upon which each of the instant municipalities relies for the power, do not convey it.

I agree with so much of the majority opinion as holds rent control constitutionally delegable by the Legislature to municipalities. I do not agree that *N. J. S. A.* 40:48-2, properly construed in relation to the specific subject matter here of concern, has in fact delegated it.

I understand the majority rationale to be that *any* power which is constitutionally delegable to a municipality, no matter the extent to which, along with its local impact, it affects

the applicability of general private law and rights thereunder and involves interests in which the State at large has a vital concern, is *automatically* to be deemed in fact delegated by *N. J. S. A.* 40:48-2 so long as state preemption of the subject matter cannot be found. I would think such a principle unsound.

It will be helpful if I capsule the substance of my contrasting view of *N. J. S. A.* 40:48-2 before explaining how I arrive at it. The section reads:

Any municipality may make, amend, repeal and enforce such other ordinances, regulations, rules and by-laws not contrary to the laws of this state or of the United States, as it may deem necessary and proper for the good government, order and protection of persons and property, and for the preservation of the public health, safety and welfare of the municipality and its inhabitants, and as may be necessary to carry into effect the powers and duties conferred and imposed by this subtitle, or by any law.

By its language and sense the granted power is confined to subject matter concerning the particular "municipality and its inhabitants." It therefore obviously does not extend to subject matter affecting general law or private rights of citizens at large or involving state policy and concern as distinguished from local. The act is simply a catch-all to pick up and delegate appropriate aspects of local police power which the Legislature may have overlooked in the course of its manifold delegations to municipalities of specified regulatory powers.

However, one finds that a broad diversity of potential subject matter falls into both categories stated — matters of local concern and those of state concern. The subject here at hand, rent control, is illustrative. Thus, deciding which aspect of concern shall be determinative as to the coverage of the general language of the Home Rule Act in a specific instance requires a weighing by the court of the respective local and state concerns from every standpoint which would rationally point to the putative legislative intent. I conceive that this Court engaged in that exercise in *Wagner,*

found that the state concerns greatly predominated, and therefore held the unrestrained power of rent control was not intended by the Legislature to pass to the municipalities automatically by enactment of *N. J. S. A.* 40:48-2. For reasons which follow, I agree with that judgment.

The constructional issue is complicated by some ambiguity in the previous decisions of the Court concerning the distinction between the criteria of constitutional delegability of powers to a municipality and the criteria as to what particular powers were in fact delegated by the general police power provisions of the Home Rule Act. *N. J. S. A.* 40:48-2. Unfortunately, the opinion in *Wagner, supra,* blurs the distinction. It contains language suggestive of the concepts both that rent control is not delegable, and, on the other hand, that it is delegable but not in fact delegated under the statute because of the great predominance of its state-wide aspects over its local aspects. I believe the case finally shakes down to the latter as the controlling rationale.[1]

In the area of inherent non-delegability *Wagner* cites, on the authority of *dicta* in *Paul v. Gloucester County,* 50 *N. J. L.* 585, 601-602 (E. & A. 1888), such subjects as the law of ejectment, attachment and descent. (24 *N. J.* at 478). *Wagner* adds the master and servant and landlord and tenant relationships, administration of estates, etc. (*Id.* at 478). There then follows the enigmatic statement:

> * * * The broad grant of power under *R. S.* 40:48-2, *supra,* and *N. J. S. A.* 40:69A-29 and 30, *supra,* relates to matters of local concern which may be determined to be necessary and proper for the good and welfare of local inhabitants, and not to those matters involving state policy or in the realm of affairs of general public interest and applicability.

---

[1] "Moreover, legislative history since the inception of federal controls after the beginning of World War II shows a clear recognition that rent control was not a matter within the realm of municipal power *without express authority from the State.*" (Emphasis added.) (24 *N. J.* at 479)

It seems to me that this expression, which has recently been quoted with approval in other cases involving the scope of *N. J. S. A.* 40:48-2, *Summer v. Teaneck,* 53 *N. J.* 548, 552-553 (1969) ; *N. J. Builders Ass'n v. Mayor E. Brunswick Tp.,* 60 *N. J.* 222, 227 (1972), is too vague for usefulness as a benchmark of constitutional delegability as contrasted with its high utility as a broad guide for judicial determination as to whether the Home Rule Act has actually delegated a particular power or subject matter. There is almost a limitless variety of types of power and subject matter which have been exercised or controlled by municipalities relating both "to matters of local concern" and, albeit indirectly, to matters "involving state policy" or "affairs of general public interest." Since delegability is typically referred to in the decisions solely in terms of matters not involving private law of general applicability, the foregoing considerations strongly suggest that in practically all cases of mixed local and state concern constitutional delegability exists. Rent control is an example *par excellence.* But the opinion in *Wagner,* as quoted above, in setting up criteria in terms of local as opposed to state concern which are not mutually exclusive, is illusory if attempted to be used for testing delegability *per se.* If, however, the *Wagner* formulation is used solely as a broad guide for judicial inquiry into whether the Legislature intended the general language of *N. J. S. A.* 40:48-2 to vest municipal authority to legislate on a particular subject, it does serve a useful purpose. It informs the judgment of the court as to the broad categories of relevant data which after examination and appraisal can lead to a rational determination as to whether it is sensible to impute to the Legislature an intent that by the generality of the language of section 40:48-2 the particular area of public policy should be vested in unchanneled municipal discretion.

Some of the language in *Summer v. Teaneck, supra,* is suggestive of the approach I would take. After quoting *N. J. S. A.* 40:48-2, and citing the Constitution, Art. IV, § VII,

par. 11, and *Fred v. Mayor and Council of Borough of Old Tappan,* 10 *N. J.* 515, 519–521 (1952), as authority for a conclusion of plenary grant of broad police power to municipalities, the court says (53 *N. J.* at 552) : "Nonetheless there is an implied *limitation upon* this pervasive grant," quoting the language I have already excerpted from *Wagner, supra,* by way of a qualification of what the "grant" "relates to," *i. e.,* "matters of local concern" etc. and not to those "involving state policy", etc. (Emphasis added.)

See also *In re Public Service Electric and Gas Co.,* 35 *N. J.* 358, 371 (1961), wherein, although the case really went off on the point of state. preemption (local attempt to regulate manner of transmission of electric power through the municipality), the court said, citing *Wagner,* that "even where the State Legislature has not spoken, some matters, inherently in need of uniform treatment, are not a proper subject for municipal legislation." · Again, while the opinion did not expressly distinguish between constitutional delegability and delegation in fact, its tenor suggests to me a judicial assessment that while the subject matter did literally come within *N. J. S. A.* 40 :48–2, having obvious and serious local implications from a health and hazard standpoint, the preponderating influence of its state-effect aspects weighed sufficiently to warrant the conclusion that the Legislature did not intend by the general grant its regulation by municipalities.

It may be observed that the statutory constructional problem is somewhat cognate to that of state preemption by indirection. Evidence of legislative intent, for general purposes, can be found in fairly amorphous factual background material as well as in express statutory statement. See *Oxford Consumer Dis. Co. of No. Phila. v. Stefanelli,* 102 *N. J. Super.* 549, 564–565 (App. Div. 1968), mod. other grounds, 104 *N. J. Super.* 512 (App. Div. 1969), mod. other grounds, 55 *N. J.* 489 (1970), app. dism. 400 *U. S.* 808, 923, 91 S. Ct. 45, 27 L. Ed. 2d 38 (1970). Thus, in *State v. Ulesky,* 54 *N. J.* 26 (1969), where the court found that various state

policies argued against municipal power to adopt a criminal registration ordinance, even though such authority would be assumed to fall within the apparent breadth of *N. J. S. A.* 40:48–2, and no state statute duplicated the precise area of the municipal action (although some bore on the general problem), the court said (at 31):

It seems to us, therefore, that the subject is such that, while it does not foreclose the delegation of the State's police power to municipalities, it nonetheless advises against that course except under statutory guidance and restraint.

While the result of bar in *Ulesky* was categorized under the label of state preemption, it has frequently been noted that there is no magic in labels. The doctrine of preemption is simply one of degree of manifestation by other legislation and indicia of legislative intent, easily demonstrable or reasonably inferable, that the Legislature does not desire a given consequence of the uncanalized delegation otherwise *prima facie* indicated by the broad contours of *N. J. S. A.* 40:48–2 — but wants the subject matter dealt with only at the state level. It is only a doorstep away from the cognate principle that, by a similar resort to all available indicia of legislative intent, it can rationally be determined that given subject matter is not intended by the general grant of *N. J. S. A.* 40:48–2 for unrestricted municipal regulatory discretion; as where such indicia point to an intent for withholding of the power unless the Legislature grants it expressly, whether with or without state-mandated controls or standards. The common principle applicable in both areas is that the court will not permit itself to be locked in by absolute presumptions of legislative intent in a search for the meaning of *N. J. S. A.* 40:48–2.

I thus proceed to weigh the factors of state *vis-a-vis* local concern relevant to a determination of the legislative intent as to whether *N. J. S. A.* 40:48–2 delegates totally unrestricted regulatory jurisdiction on rent control to municipalities.

1. The jurisdiction affects freedom to contract with respect to a very common and important commodity in general commerce — apartment units of every description and price range, with ownerships varying in character from investment syndicates to modest decedents' estates in trust for dependents. The power involves interference with the owner's statutory right to terminate a tenancy at the end of a lease period (though not exercised by the subject municipalities), normally enforcible by an array of statutes. See *Wagner, supra,* 24 *N. J.,* at 479.

2. The public need for and constitutionality of rent control regulation depends upon the existence of a shortage of housing accommodations of emergency dimensions. This is typically a concomitant of general cyclical inflationary trends of regional if not national proportions. While the extent of the housing shortage may to some minor degree vary locally, the subject is predominantly of statewide rather than peculiarly local incidence and concern. There is therefore corresponding need that, if there is to be rent control at all, uniform statewide regulations be enacted in respect of such basic incidents as assurance of fair return on investment, provision for restrictions on eviction or termination of tenancy and as to adequacy of maintenance of services, fair procedures for administrative review of applications for relief by either landlords or tenants, and fair and sufficiently comprehensive administrative rules and regulations in all other pertinent respects to implement the legislative provisions adopted. All of these desiderata peculiarly require the manpower, expertise and funding typically available at state rather than local levels, permissibly supplemented locally with the resources of such municipalities as may opt (if local option is legislated) for coming into a program under legislatively fixed minimum standards.

The foregoing has been the established, and, so far as one can tell, the generally effective manner by which this State has administered rent control in the past, subject to overriding or complementary federal controls, generally

equally comprehensive, when those have existed. A comparison of the well-thought out and comprehensive provisions of such rent control statutes as *L*. 1953, *c*. 216 and *L*. 1950, *c*. 234 with the rudimentary ordinances now before us well illustrates the point. As examples of a number of patent apparent deficiencies of the latter,[2] one finds that none of them undertake to assure an owner a right of fair operating return on his investment; compare *L*. 1953, *c*. 216, § 16(b); one of them contains no time limitation; another by reason of inept draftsmanship fails to effectuate an apparent intent to prohibit terminations of tenancy at the end of lease terms at the will of the lessor. There are numerous ambiguities. While the inexpertness or drafting and substantive deficiencies of particular rent control ordinances adopted without statewide controls or standards does not, of course, establish *per se* that the Legislature did not intend to delegate such unrestricted power by *N. J. S. A.* 40:48–2, they do constitute some evidence as to what may be expected, in practice, under such a view of the statute, and thus may be looked to, along with all the other available indications of intent, as some manifestation of the legislative desires in the matter.

3. The nature of past legislative activity in the field is evidential. When a strong need has been manifested, the Legislature has acted. Its chosen mode of recognition of appropriate local participation has been by permitting local option to come into or stay out of a state-regulated scheme, as in *L*. 1953, *c*. 216, § 28; or by special legislation available for the use of opting municipalities, as in *L*. 1956, *c*. 146. The Legislature has also noticed the subject of municipal rent control in more recent years, expressly delegating such power in relation to substandard multiple dwellings. *L*. 1966, *c*. 168, § 4. Even in that limited context it took care to establish standards and to assure fair net operating

---

[2]The points not having been argued, I do not purport here to be passing upon the validity of any of these ordinances.

income to owners, § 4(e), among other safeguards. At the moment of this writing the Legislature is in earnest debate over a comprehensive rent control bill which has passed the Assembly, evidencing ongoing concern with the subject at the state level.

4. Chaotic conditions can be foreseen in relation to the interests of both owners and tenants if only a municipal boundary line can separate apartment houses subject to no rent controls whatever from those where any of an infinite variety of kinds of control may exist, none conformable to any state regulation. This is the fair prospect, under the determination of the majority, in solidly urban areas in the populous counties where a number of municipalities frequently are found to coexist within a few square miles, many with concentrations of apartment houses of every size, description and rental category, and usually forming an integral market area for such facilities, in which owners and potential occupants vie competitively.

All of the foregoing considerations may properly be deemed influential upon the collective legislative mind. Reflection over them firmly convinces me, notwithstanding such factors as may argue for the desirability of unrestricted local discretion, that in enacting *N. J. S. A.* 40:48-2 the Legislature never intended, and does not now, that the totally unrestricted power of rent control regulation should exist in the municipalities of the State at large without express suplementary legislative authorization.

*For affirmance*—Chief Justice WEINTRAUB, Justices JACOBS, PROCTOR, HALL, MOUNTAIN and SULLIVAN—6.

*For reversal*—Judge CONFORD—1.

*For reversal and remandment*—Chief Justice WEINTRAUB, Justices JACOBS, PROCTOR, HALL, MOUNTAIN and SULLIVAN —6.

*For affirmance*—Judge CONFORD—1.