904 A.2d 839

SALEM MANAGEMENT COMPANY, PLAINTIFF–APPELLANT, v. TOWNSHIP OF LOPATCONG, LOPATCONG RENT LEVELING BOARD, LOPATCONG MAYOR AND TOWN COUNCIL, FRANK BAYLOR, MARY BAYLOR, ROBERT A. FLEMING, HENRIETTA TITTLE, ANN HELLER, ANN MCGINLEY, JOSEPHINE DE-MONTI, MAVE HOLENSKI, JOSEPH HOPEK, AND ANTHONY RANALLO, DEFENDANTS–RESPONDENTS.

ZUFENG LEI, PLAINTIFF–RESPONDENT v. BRAKELEY ASSOCIATES, DEFENDANT, AND SALEM MANAGE-MENT COMPANY, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted March 7, 2006—Decided August 21, 2006.

574

Before Judges KESTIN, HOENS and SELTZER.

*Wolf, Block, Schorr & Solis–Cohen,* attorneys for appellant (*Charles X. Gormally* of counsel and, with *Sean A. Smith,* on the brief).

*Sirkis & Lavery,* attorneys for the Lopatcong respondents (*Kevin C. Decie,* of counsel and on the brief).

*Zufeng Lei,* pro se plaintiff-respondent.

No brief was filed by any other party.

The opinion of the court was delivered by

KESTIN, P.J.A.D.

Salem Management Company (SMC), plaintiff in one of these matters consolidated at trial and a defendant in the other, appeals from the trial court's orders of June 23, 2005 and July 12, 2005,

entered on cross-motions for summary judgment, upholding the Township of Lopatcong's rent control ordinance and applying it to the rent levels for previously vacant apartments. We affirm.

In addition to memorializing the ruling on the statutory validity issues, the June 23, 2005 order provided:

> The Lopatcong Rent Leveling Ordinance is hereby interpreted to allow Plaintiff to increase rents on all apartments, whether vacant or occupied, at a rate of three percent (3%) per annum per apartment. Plaintiff must follow the usual procedure in the Ordinance to obtain the three percent (3%) annual increases. Plaintiff is not permitted to charge any rent above a three percent (3%) per annum per apartment increase unless expressly authorized under the Ordinance[.]

That order went on to establish some terms affecting the rents of particular tenants and credits due them. It concluded:

> [O]ne rental increase per year is allowable on all rental units, whether occupied or vacant, as provided for in the Lopatcong Rent Control Ordinance. The 3% allowable increase shall be calculated against the previous year's base rent as provided for in the Lopatcong Rent Control Ordinance.

The July 12 order dealt specifically and exclusively with issues having to do with the claims of Zufeng Lei, plaintiff in one of the consolidated matters, including rent payment and credit particulars.

Lopatcong Township's rent control ordinance allows a landlord to increase rent by no more than 3 percent above a tenant's previous rent. SMC owns the 400–unit Brakeley Gardens apartments in Lopatcong. When certain Brakeley residents complained about SMC's rent prices, the municipality's rent leveling Board (the Board) adopted resolutions ordering SMC to refund overcharges in as many as ten instances. SMC disagreed with the Board's decision and filed this action in lieu of prerogative writs in April 2004, claiming, inter alia, that the ordinance could not validly apply to vacant apartments.

Judge Coyle stated the reasons for his rulings in a comprehensive, well-considered oral opinion. He began with a review of the procedural history and factual background:

> We have a complaint in lieu of prerogative writs arising from a challenge to the Lopatcong Township Rent Control Ordinance. The Ordinance was originally

adopted in 1982 and was recently readopted in April 2001 and again in 2003. Specifically, the pertinent provisions of the Ordinance [are]:

Section 173–2: Determination of rent. Limitations on rent increases. Establishments of rents between the landlords and tenants to whom this chapter is applicable shall be determined by the provisions of this chapter. At the expiration of a lease or at the termination of the lease of a periodic tenant, no landlord shall request or receive a percentage increase in rent which is greater than three percent per annum in the next ensuing year. Those tenants who provide for their own heat or the cost of fuel, therefore, shall not suffer an increase in any one year greater than 2.8 percent per annum.

Section 173–3: Prohibited rental increases. Any rental increase at a time other than at the expiration of a lease or termination of a periodic lease is prohibited and void. Any rental increase of that authorized by the provisions of this chapter is prohibited and void.

Section 173–14: Rental increases to be in compliance with this chapter. No landlord shall, after the effective date of this chapter, charge any rents in excess of what he was receiving from the effective date of this chapter, except as otherwise authorized by operation of this chapter.

Section 173–18: This chapter, being necessary for the welfare of the township and its inhabitants, shall be liberally construed to effectuate the general intended purposes.

* * * So, obviously, there is no provision in here having to do with vacancies...
Section 173–18 makes it clear that it shall be liberally construed to effectuate the general intended purpose. That's pretty obvious what the purpose is, is that all of these units would be under rent control.

The plaintiff, Salem Management, operates Brakely Gardens, a large apartment complex which consists of more than 90 percent of the rental units in Lopatcong Township. Certain rental units they possessed were vacant for a significant period of time immediately prior to acquiring tenants to fill some of those vacancies. These tenants, now defendants in this litigation, were then charged rents that they considered were improper under the Ordinance. The tenants then filed numerous complaints to that effect with the Lopatcong Rent Leveling Board. After several hearings the Board enacted Resolution 04–01 and ... Resolution 04–08, which found in favor of each of the tenants and declared the plaintiff had violated the Ordinance. These resolutions further ordered that the rents be rolled back to what the Board deemed to be proper levels and required Salem Management to refund certain monies to the tenants.

As a result of these determinations, Salem Management filed the present complaint in lieu of prerogative writ. Therein, Salem alleges that Lopatcong's Rent Control Ordinance is unconstitutional, both on its face and as applied. Salem further argues that the Lopatcong Rent Leveling Board exceeded the proper bounds of their police power in attempting to regulate the rents charged in vacant apartments, and furthermore, by ordering rollbacks and refunds of the rents charged. None of these actions, argues the plaintiff, are provided for in the Rent Control Ordinance.

* * * In the present matter both parties have brought competing motions for summary judgment. Therefore, both parties essentially dispute two critical issues. The first issue concerns whether the Lopatcong Township Rent Control Ordinance is constitutional. *The second issue concerns whether the defendants' aforementioned actions were impermissible abuse of police power.* I'm first going to deal with the constitutionality of the Rent Control Ordinance.

## The judge decided the issues as follows:

* * * After evaluating the evidence this court finds that the Rent Control Ordinance is constitutional as a matter of law. The case law in this state makes it abundantly clear that a party seeking to strike down a rent control ordinance on constitutional grounds faces an uphill battle. *Inganamort v. Borough of Fort Lee,* 62 *N.J.* 521, 303 *A.*2d 298 (1973).... Our Supreme Court established that municipalities have the power to enact or enforce Rent Control Ordinances pursuant to *N.J.S.A.* 40:48–2. *N.J.S.A.* 40:48–2 grants municipalities the power to adopt ordinances that promote the general welfare. Regardless of one's personal views on the efficacy of rent control statutes, their presence in this state is now commonplace. In fact, since the Supreme Court's decision in *Inganamort* [,] more than 150 municipalities have enacted rent control measures. What has emerged ... in rent control jurisprudence since that time is a test for constitutional validity that is hardly stringent. Specifically, the applicable constitutional test posits whether the legislative body had any factual basis that would have permitted it to rationally conclude that the competitive rental housing market was not operating in the public interest. That's *Troy Hills Village v. Township Council of Parsippany–Troy Hills,* 68 *N.J.* 604, 616, 350 *A.*2d 34 (1975)....

In seeking to invalidate this rent control statute, the plaintiff does so bearing the burden of having to rebut the presumption of validity that all ordinances carry. It is the opinion of this court that the plaintiff has failed to rebut this presumption. This court further finds that the plaintiff has failed to demonstrate that the Rent Control Ordinance at issue is constitutionally infirm.

In *Brunetti v. Borough of New Milford,* 68 *N.J.* 576, 350 *A.*2d 19 (1975), ... [the] Court held that permissible justifications for enacting a Rent Control Ordinance include[] such things as a monopolistic housing market or the prevalence of exorbitant rents. The facts presented show that the plaintiff has control of more than 90 percent of the rental units in the Township of Lopatcong. Thus, the presence of monopolistic conditions such as this would provide a rational basis upon which to enact to this Rent Control Ordinance.

The plaintiff has challenged this Ordinance both on its face and as applied. The Supreme Court in *Hutton Park Gardens v. Town Council of West Orange,* 68 *N.J.* 543, 350 *A.*2d 1[] (1975), ... provided two examples of Rent Control Ordinances[] which would be facially unconstitutional. For example, the court stated that a Rent Control Ordinance put in place for 14 years and which failed to provide for rent increases would be unconstitutional. Another example of an unconstitutional Rent Control Ordinance provided by the court in *Hutton Park* entailed situations where the Ordinance set such a low level of rent that the local landlords would be operating at a loss. Clearly [,the] Lopatcong Rent Control Ordinance does not even come close to approaching those examples.

This court similarly finds that the Ordinance is constitutional in its application. First and foremost, the plaintiff never appeared before the Lopatcong Township Rent Control Board to request an increase in rent levels due to financial hardship. Therefore, the plaintiff failed to exhaust all administrative remedies prior to bringing this suit, which in and of itself places the application on weak footing. However, even disregarding this requirement, the plaintiff has failed to show that the Ordinance is confiscatory or denies them a fair rate of return. The simple fact remains that the Ordinance provides both a hardship provision as well as a capital improvement provision to justify some of the effects of rent control. Thus, ... the court finds the Ordinance is constitutional as a matter of law. The defendant's motion to enter summary judgment on this point is hereby granted. The plaintiff's motion of summary judgment is denied.

Let's go with the enforcement and possible abuse of police power. The parties also assert competing arguments as to whether the actions taken by the Rent Control Board operate as an abuse of police power. The court agrees with the arguments offered by the defendants and, therefore, finds that the Board's endorsement of the Ordinance is not an abuse of power.

Although the term vacant apartments is not explicitly used in the Ordinance, a common sense interpretation of the plain language of the Ordinance establishes that these apartments, renting vacant apartments, were intended to be part of the rent control scheme. This finding is substantiated by clear and unambiguous language found in Section 173–14, which states that no rental increase will be permitted other than those explicitly provided for in the Ordinance. Moreover, to render a contrary decision would simply eviscerate the unmistakable purpose of the Ordinance; namely, to control the rents charged throughout the Township of Lopatcong, not only for specific apartments.

Same is true with the Board's action in ordering of the rent refunds and rollbacks of the rents charged. In short, Section 173–12(c)(2) provides that the Board is granted the power to order decreases, rollbacks and refunds. This provision is reinforced by the general dictates of 173–18, which states that this chapter, being necessary for the welfare of the township and its inhabitants, shall be liberally construed to effectuate the general intended purposes. More importantly, the Board's power to order refunds and rollbacks is inherent in the Ordinance.

While it was certainly true that this Ordinance is not the most artfully composed, it is not the place of this court to quibble over the grammatical composition of local ordinances. That notwithstanding, this court is somewhat troubled by the effect that this Ordinance could have with regard to the value of vacant apartments. Were the court to accept the totality of the defendant's argument regarding rent increases, and this is where I kind of misunderstood your position because when I went back and I was trying to do the math and the math to me was not coming out.

Basically, what I'm of the opinion is this. I do not accept the plaintiff's argument that they are entitled to charge what they deem to be fair market rates for these units. Common sense interpretation of the statute reveals that the vacant rental units should be entitled to the same three percent per annum

increase as those units with the expiration of the lease or the termination of the lease.

Therefore, the court will grant a three percent per annum increase on any unit that was unoccupied to correspond with the rental increase of a unit coming off a one-year lease, okay. So therefore, the court will permit a three percent per annum increase on the vacant units pursuant to Section 173-2.

We are in substantial agreement with Judge Coyle's stated rationale and the results he reached on all issues.

In this appeal from the trial court's decision rendered on cross-motions for summary judgment, SMC does not dispute the basic premise that it owns a major portion of the rental properties available in the Township. It argues, instead, that there was no showing that it

has asserted monopolistic control over the rental market or has ever charged exceedingly high rental amounts that created an unfair rental market. Here, there is simply no evidence to support a claim that appellants have ever engaged in egregious rental behavior.

In addition, Lopatcong has not established or shown that there was/is a lack of affordable rental housing in Lopatcong * * * * [or] a prevalence of substandard housing or a deterioration of existing housing stock * * * [or] a threat to the current available housing.

* * * *

... Lopatcong is unable to provide any reasonable basis for enacting its rent leveling ordinance.

 These arguments miss the point and, because they do not successfully rebut the presumption of validity that surrounds all municipal ordinances, *see Hutton Park Gardens, supra,* 68 *N.J.* at 564, 350 *A.*2d 1, they must be rejected. Judge Coyle's resolution of the issues based on the authorities he cited was essentially correct. SMC has, simply, not met its burden to establish lack of rational basis in the Township's underlying determination that the unregulated competitive rental housing market was not operating in the public interest. *See Troy Hills Village, supra,* 68 *N.J.* at 616, 350 *A.*2d 34. *See also Brunetti, supra,* 68 *N.J.* at 593–94, 350 *A.*2d 19. And, Judge Coyle was manifestly correct, as well, to reject, on failure to exhaust grounds, SMC's attack on the ordinance as applied, i.e., that the ordinance's financial hardship and

capital improvement provisions are "unconstitutionally vague and overly burdensome."

In sum, applying summary judgment standards anew, *see Prudential Property & Casualty Ins. Co. v. Boylan,* 307 *N.J.Super.* 162, 167, 704 *A.*2d 597 (App.Div.1998), we discern that the trial court committed no error in concluding that the rent leveling ordinance at issue met all the tests for constitutional validity previously considered and applied by the Supreme Court.

■ In this matter also, however, SMC raises an issue of first impression regarding the application of this ordinance to vacant units. Plaintiff argues that by applying the three-percent rent limitation to vacant units, the Board impermissibly and unconstitutionally exercised its police power. Here, too, we are in substantial agreement with Judge Coyle's resolution.

Plaintiff asserts that the ordinance, on its face, applies the three-percent limitation only to "the expiration of a lease or [upon] termination of the lease of a periodic tenant;" that the municipality lacks the power to extend the principle of rent control to vacancy situations; and that the Board exceeded its authority in applying the standards of the ordinance to vacant units. The specific provision of the ordinance at issue is § 173–2.

■ In concluding that application of rent control to vacant units was rational and within the intendment of the ordinance, and, therefore, constitutionally sustainable, the judge emphasized the language of § 173–14 of the ordinance:

> No landlord shall, after the effective date of this chapter, charge any rents in excess of what he was receiving from the effective date of this chapter, *except as otherwise authorized by operation of this chapter.* (Emphasis added.)

Judge Coyle's stated rationale in this regard was also correct. *See also, e.g., Cashman v. City of Cotati,* 415 *F.*3d 1027 (9th Cir.2005), *cert. denied,* —— *U.S.* ——, 126 *S.Ct.* 1432, 164 *L.Ed.*2d 133 (2006). In addition to other reasons he gave, we note that an administrative agency's interpretation of the law it has been assigned to administer is entitled to reasonable deference on

review. *See Matturri v. Board of Trustees, Judicial Retirement System,* 173 *N.J.* 368, 381, 802 *A.*2d 496 (2002).

■ An essential test of rational basis for a rent control ordinance is whether the ordinance permits an efficient landlord to obtain a "just and reasonable" return on his property. *See Helmsley v. Borough of Fort Lee,* 78 N.J. 200, 210, 394 A.2d 65 (1978); *Brunetti, supra,* 68 *N.J.* at 589–90, 350 *A.*2d 19; *see also Santa Monica Beach, Ltd. v. Superior Court,* 19 *Cal.*4th 952, 81 *Cal.Rptr.*2d 93, 968 *P.*2d 993 (1999). To succeed in its challenge, a claimant must persuade the court that the ordinance has a widespread confiscatory impact upon efficient landlords. *See Helmsley,* 78 *N.J.* at 215–23, 394 *A.*2d 65. In this regard also, SMC has failed to meet its burden of persuasion. SMC has made no concrete prima facie showing tending to establish that it was denied a just and reasonable return because of the manner in which the ordinance was interpreted or applied, or that the result reached on the local level was arbitrary, unreasonable, capricious, or discriminatory.

SMC's showings in this regard have fallen far short of those proffered in *Helmsley* to support the Court's determination that the two-and-a-half percent ceiling on rent increases at issue in that case did not pass constitutional muster. *See id.* at 210–34, 394 *A.*2d 65. SMC, instead, offers little more than arguments about the merits of vacancy decontrol. Such bare assertions cannot substitute for evidence that a landlord has been deprived of a just and reasonable return on its property. *See id.* at 210, 394 *A.*2d 65.

Given that ordinances are cloaked with a presumption of validity, with due regard for the language of the instant ordinance, and in the light of the rental housing monopoly SMC holds in the Township, as well as the lack of expert testimony in support of the various positions SMC has advanced, we conclude that Judge Coyle correctly determined that the Board's enforcement and application of the municipality's rent control ordinance was a

permissible and constitutional exercise of the municipality's police powers.

Affirmed.