JOHN O. LINDSLEY, RELATOR, v. THE BOARD OF MANAGERS OF THE NEW JERSEY STATE PRISON, RESPONDENT.

Argued January 22, 1930—Decided August 2, 1930.

Before Justices TRENCHARD, LLOYD and CASE.

For the relator, *Harry Heher.*

For the respondent, *William A. Stevens,* attorney-general, and *Theodore Backes,* second assistant attorney-general.

The opinion of the court was delivered by

CASE, J. The relator, John O. Lindsley, on June 26th, 1917, entered a plea of *"nolo contendere"* to an indictment for a murder committed on June 9th, 1917, and received a sentence of "life imprisonment in the state prison." It is stipulated that "on July 1st, 1928, the said relator had served in said prison, by virtue of said sentence and judgment, a term of fifteen years less earned commutation thereof," and that at a meeting of the board of managers of the state prison held in the month of December, 1928, the principal keeper of the state prison presented to the board of managers for its consideration the matter of the parole of the relator under the act which vested in said board the power to parole prisoners confined in state prison under the Indeterminate Sentence act, and that thereupon the said board, in accordance with an opinion of the attorney-general, refused to consider the case of the relator for parole and has ever since refused and still refuses to consider the matter. The relator, submitting that he is entitled of right to have his application considered and acted upon by the board of managers, caused a rule to issue directing the respondent to show

cause why a peremptory writ of *mandamus* should not issue commanding and enjoining the board to consider and act upon his application for parole. The matter is now up on the return of that rule. The only facts before us aside from those already stated are that the relator, having been conveyed to the state prison on July 13th, 1917, has since been and is now incarcerated therein, that the relator was brought before the board for parole consideration, in accordance with the "laws of 1918," at the said meeting held in December, 1928, and the opinion of the attorney-general upon which the board acted is set forth. The opinion appears to have been given in December, 1927, and was not rendered with respect to this particular case. Without passing on the legal sufficiency of that opinion, we proceed to consider whether it clearly appears that the relator, at the time of presenting his application for parole, was entitled as of right to have the same considered and acted upon.

The relator rests his case on the act entitled "A supplement to an act entitled 'An act relating to courts having criminal jurisdiction and regulating proceedings in criminal cases (Revision of 1898),' approved June fourteenth, one thousand eight hundred and ninety-eight," being chapter 191 of the laws of 1911 and generally known as the Indeterminate Sentence act, and upon the act originally entitled "An act concerning the charitable, correctional, reformatory and penal institutions, boards and commissions, located and conducted in this state, which are supported in whole or in part from county, municipal or state funds," approved February 28th, 1918, being chapter 147 of the laws of 1918 and generally known as the Institutions and Agencies act, and upon the several supplements to and amendments of those acts.

The Indeterminate Sentence act was amended by chapter 214 (*Pamph. L.* 1914), to provide in the second paragraph that "every such sentence to confinement * * * shall set forth a maximum term * * * likewise a minimum term * * * provided further every prisoner who * * * if sentenced for the term of his natural life, has served not less than fifteen years, may be released on parole as herein

provided." Such part of section 2 as related to the release on parole of a person under life sentence after he had served not less than fifteen years was repealed by chapter 50 (*Pamph. L.* 1922) ; and the entire statute was repealed by chapter 214 of the laws of 1926, with this proviso, however: "Any person convicted of an offense which was committed prior to the day on which this act shall take effect shall be punished as if this act had not been passed and any such person shall retain and have all the rights and privileges conferred by the acts herein repealed." The relator contends that either of these repealers, if held to deprive him of his alleged rights under the statute, is, as to him, *ex post facto*. We do not, however, feel impelled to consider this contention as the relator had not, either when he applied for parole or when he made application for the writ of *mandamus*, and has not yet, served that period of time, namely, fifteen years, which would entitle him, under the statute, to be considered for parole.

It is true that the Institutions and Agencies act contained in section 205, until the words were amended out by chapter 196 of the laws of 1927, the following: "In case of a life sentence the minimum term shall be taken to be fifteen years," and in section 306 certain deductions from the minimum term for good behavior and the like; but we do not read these words into the Indeterminate Sentence act; neither do we read the Indeterminate Sentence act into the above-mentioned provision of the Institutions and Agencies act. We do not consider that the statutes are sufficiently *in pari materia* as to relator to justify this method of construction. They represent different schemes and different legislative conceptions. A marked distinction between them is that the former is impressed with a mandatory aspect and the latter with a discretionary aspect which, in each instance, is lacking from the other. The Indeterminate Sentence act very clearly distinguishes the life sentence from the maximum-minimum sentence.

We find nothing in the Indeterminative Sentence act to warrant the application for a peremptory writ of *mandamus*.

Looking at the Institutions and Agencies act, as comprehensive within itself, we first note that the statute did not come into existence until after the crime had been committed and the sentence imposed, and that the only application of the statute to a person serving a life sentence is found in the words already quoted (section 205) : "In case of a life sentence the minimum term shall be taken to be fifteen years," which words were stricken from the statute by chapter 196. *Pamph. L.* 1927. The relator contends that this repealer, also, is *ex post facto* as to him because, if given a retroactive construction, it impairs his substantial rights. We understand the relator, in thus using the word "retroactive," to signify any application of the repealer to his sentence even though this be by way of depriving him of credits not then earned but which, under the law as it had theretofore been, he might expect to earn; because, as hereinafter mentioned, there is no data in the record by which we are informed regarding the credits already earned at the passage of the repealer.

The generally accepted classification of *ex post facto* laws is as follows:

1. A law which provides for the infliction of punishment upon a person for an act done which, when it was committed, was innocent.

2. A law which aggravates a crime or makes it greater than when it was committed.

3. A law that changes the punishment or inflicts a greater punishment than the law annexed to the crime when it was committed.

4. A law that changes the rules of evidence and receives less or different testimony than was required at the time of the commission of the offense in order to convict the offender. *People* v. *Hayes,* 140 *N. Y.* 484; *Calder* v. *Bull,* 3 *Dall.* 386; 1 *Law Ed.* 648.

Other classes sometimes added to the foregoing are:

5. A law which, assuming to regulate civil rights and remedies only, in effect, imposes a penalty or the deprivation of a right which, when done, was lawful.

6. A law which deprives persons accused of crime of some lawful protection to which they have become entitled, such as the protection of a former conviction or acquittal, or of the proclamation of amnesty. *Cooley Const. L.* 286.

Throughout the several jurisdictions variations of and extensions to the foregoing have occurred and such, "to make the classification sufficiently general to embrace all the laws which have been adjudged *ex post facto*," have been assembled by 12 *C. J.* 1101 into a further class, viz.: "Every law which, in relation to the offense or its consequences, alters the situation of a person to his disadvantage."

It is not apparent that the instance at bar comes within any of these classes, unless, indeed, it be the last, and, when analyzed, we think not even there. As the issue is framed, we cannot give separate consideration to such credits as may have accrued at and prior to the passage of the repealer. The record does not disclose the allowance or accumulation of remission credits during the period between July 1st, 1918, the effective date of the Institutions and Agencies act, and March 28th, 1927, the termination of the minimum sentence as to life terms by chapter 196 of the laws of 1927. Whether, while this legislation was in force, credits were actually recorded in such fashion as to become a vested right, and in such volume as to justify the application for parole at the time made, has not been argued; nor are the pertinent facts clearly in evidence. The point that the legislature could not, as against the relator, repeal the minimum sentence provision of the 1918 legislation was presented and argued. But the relator did not file a reason, make an argument or present the facts directed to the credits and deductions accumulated at the time of the repeal as distinguished from the later date July 1st, 1928, and we, consequently, do not express an opinion with respect thereto. The naked statement in the stipulation that "on July 1st, 1928, the said relator had served in said prison, by virtue of said sentence and judgment, a term of fifteen years less earned commutation thereof" contains no information as to the statute under which the allowance of commutation was

made, nor when it began or ended, nor—and this particularly—whether this net result includes any commutation for the period subsequent to March 28th, 1927. We feel obliged to assume that the stipulation includes an allowance of credits subsequent to March 28th, 1927, and down to July 1st, 1928. No substantial reason is advanced why an administrative measure of prison discipline, enacted after the commission of the crime, may not at any time be altered or repealed with respect to unearned credits. The issue actually presented is whether a legislative act graciously setting up a system of remissions, to be credited at intervals, becomes so immutably a part of the organic law that a subsequent statute discontinuing the practice is, as well prospectively against unearned credits as retrospectively against those already granted, *ex post facto* so far as concerns a prisoner whose crime and conviction had occurred and whose sentence had been imposed before the passage of the substantive act but whose term had not expired and whose availability for parole had not matured at the time of the repeal.

We find that the proposition as thus broadly stated is without support either in *Moore* v. *State*, 43 *N. J. L.* 203, or in any of the other cases cited in relator's comprehensive brief, and that it does not come within any of the accepted classes of *ex post facto* laws. Moreover, we have the thought that the parole powers granted by section 201, *et seq.*, of the Institutions and Agencies act carry a wide discretion. The article within which these sections are found applies to all the institutions and non-institutional agencies of the state, including, equally with the correctional institutions, such institutions as the state hospitals for the insane, the state village for epileptics, the sanatorium for tuberculous diseases, the state homes for the feeble-minded, and the state homes for disabled soldiers. Of co-extensive application is section 202, still within the same article, which provides that "the state board [viz., the state board of control of institutions and agencies, not the board of managers of the state prison] shall prescribe by rules, formally adopted, the procedure for and the granting of parole and the terms and

conditions incident thereto." What these rules are, or at any time have been, and whether the presentation of relator's application for parole conformed thereto, we are not told. We are here concerned with a statute of wide applications, covering a broad field of governmental activity and one that, perhaps necessarily, is general in many of its expressions. The paucity of the record, the seriousness of the offense of which the relator stands convicted and the apparent latitude granted by the statute to the state boards in matters of administration and detail present doubts which the relator has not removed. On the facts presented we are not satisfied that such a situation existed as clearly placed upon the board of managers of the state prison the legal obligation to act. The rule is thoroughly settled that a *mandamus* never issues where the legal obligation to perform the act which is the subject-matter of the application is not clear. *Browne* v. *Lee, 98 N. J. L.* 1.

A peremptory writ of *mandamus* is denied. If an appeal is desired, the proceedings may be moulded to that end.