EVEYLN DRESNER, *A/K/A* EVELYN MERLISS, SYLVIA KAP-
LAN AND APARTMENT & HOMES OF NEW JERSEY,
INC., PLAINTIFFS-RESPONDENTS, v. MICHAEL R. CAR-
RARA, THE PLANNING BOARD OF THE BOROUGH OF
MONTVALE AND THE MAYOR AND COUNCIL OF THE
BOROUGH OF MONTVALE, DEFENDANTS-APPELLANTS.

Argued April 28, 1975.—Decided February 23, 1976.

*Mr. Robert E. McGuire* argued the cause for appellants (*Messrs. Randall, Randall and McGuire,* attorneys; *Mr. McGuire,* of counsel).

*Mr. Donald R. Sorkow* argued the cause for respondents (*Messrs. Gruen, Sorkow and Sorkow,* attorneys; *Mr. Donald R. Sorkow* of counsel).

The opinion of the Court was delivered by

MOUNTAIN, J. In this case we consider the validity of certain municipal land use regulations having as their purpose the creation of off-street parking facilities in traffic-congested areas. The validity of the regulations in question, which are to be found in the local zoning ordinance, was sustained in the trial court. The Appellate Division, however, in an unreported opinion, reversed and we granted certification. 67 *N. J.* 92 (1975). We now affirm.

The facts are essentially undisputed and may be briefly stated. Plaintiffs are, respectively, the owners and lessee of

property located in the Borough of Montvale on Kinderkamack Road close to its intersection with Grand Avenue. A one-story building on the premises has been used as a real estate and insurance office for many years, both prior to the adoption of the municipality's zoning ordinance in 1964 and almost constantly thereafter. The building became vacant in October, 1972. In March of the following year, however, a lease was entered into with a new tenant (one of the plaintiffs in this action) who intended to devote the property to the same purpose. The premises are located in the Business "B" District, where offices are a permitted use.

Before going into possession under the new lease, the lessee, joined by the property owners, applied to the municipal building inspector for a certificate of occupancy. The application was made upon the assumption that possession and use of the property by the new tenant without such certificate would be violative of a municipal regulation. They were referred by the inspector to the Planning Board. After reviewing the matter the Board informed the applicants that it would indeed be necessary for them to secure a certificate of occupancy before transferring possession to the new tenant. The plaintiffs were further advised that in order to secure the certificate it would be first necessary for them to submit a request to the County Planning Board to permit a curb-cut so that a driveway could be constructed to afford access from the highway onto their property. Furthermore, plaintiffs were told that they would be required to grade and surface the land to provide parking facilities for six automobiles. At first they apparently intended to acquiesce, but upon learning the cost of the proposed improvements they changed their minds and promptly instituted this litigation.

■ Initially, we must point out, as did the Appellate Division, that while the zoning ordinance includes regulations imposing off-street parking requirements, they are explicitly confined to premises upon which are located buildings which have been erected or altered *subsequent* to the

date of enactment of the ordinance. Article IX, § 128–27. The building upon this tract was constructed long before the ordinance was passed and has never been altered. Hence the regulation has no application to this land.

It should further be observed that for an entirely different reason the off-street parking requirements of this ordinance could not lawfully be applied here. As has been pointed out, the property had been used for a particular business purpose for many years prior to the passage of the ordinance, and during this period of time the premises had no off-street parking facility. Accordingly, upon passage of the ordinance, the continued utilization of the property in this fashion — without off-street parking facilities — became legally protected as a nonconforming use. *N. J. S. A.* 40:55–48. *Beers v. Bd. of Adjust. of Wayne Tp.,* 75 *N. J. Super.* 305, 316 (App. Div. 1962).

Although the case can be decided in plaintiffs' favor for either of the foregoing reasons, we think, as did the Appellate Division, that something more should be said. The position of the defendant municipality seems to be that it may empower its Planning Board, by municipal legislation, to impose land use regulations upon the occasion of a change in occupancy of particular property, even though there be no accompanying change of use. This it may not do. The powers of a municipal planning board, insofar as they might possibly be thought applicable here, are to be found in the Municipal Planning Act (1953), *N. J. S. A.* 40:55–1.1 *et seq.,* and in the Official Map and Building Permit Act (1953), *N. J. S. A.* 40:55—1.30, *et seq.*[1] These statutes in no way support defendants' contention. Planning boards

---

[1] Planning boards have other statutory duties and powers which are not here relevant. See, for instance, the Blighted Areas Act, *N. J. S. A.* 40:55–21.1, *et seq.,* the Zoning Act, *N. J. S. A.* 40:55–35 and the Municipal Planned Unit Development Act (1967), *N. J. S. A.* 40:55–54, *et seq.* Their responsibilities have recently been restated by the Legislature in the Municipal Land Use Law, *N. J. S. A.* 40:55D–1, *et seq.,* which will take effect August 1, 1976.

are at liberty to impose land use controls upon certain specified occasions. The occasion which most commonly arises is when application is made for subdivision approval. In such a circumstance a planning board may require any of the improvements listed in *N. J. S. A.* 40:55–1.21 "before final approval" is given. Although the present statute authorizes "such other subdivision improvements as the municipal governing body may find necessary in the public interest," off-street parking is not specifically enumerated. Ordinances providing for off-street parking facilities have been generally sustained, however, even when an enabling act does not specifically authorize such facilities. 2 *Anderson, American Law of Zoning*, § 8.40, p. 24 (1968) ; Annotation, "Validity and Construction of Zoning Regulations Requiring Garage or Parking Space," 74 *A. L. R.* 2d 418 (1959). *See Allendale Congregation Jehovah's Witnesses v. Grosman*, 30 *N. J.* 273 (1959), appeal dismissed, 361 *U. S.* 536, 80 *S. Ct.* 587, 4 *L. Ed.* 2d 538 (1960). It should be noted that the new Municipal Land Use Law includes off-street parking facilities among the improvements that may be required by a zoning ordinance. *N. J. S. A.* 40:55D–65d.

■ There is, however, no statutory source for the power defendants seek to exercise. No enactment authorizes a municipality to impose requirements of this kind where no subdivision approval is sought and where there is no change of use. The absence of an enabling act is fatal to the argument that such power exists, for a municipality has no inherent power to adopt zoning or other land use ordinances; it may act only by virtue of a statutory grant of authority from the Legislature. N. J. Const., Art. 4, § 6, ¶ 2; *Fischer v. Bedminster Township*, 11 *N. J.* 194, 201 (1953) ; *J. D. Construction Corp. v. Board of Adjustment of Freehold Township*, 119 *N. J. Super.* 140, 144 (Law Div. 1972) ; *Piscitelli v. Township Committee of Scotch Plains Township*, 103 *N. J. Super.* 589, 594 (Law Div. 1968). See generally, 6 *McQuillin, Municipal Corporations* (3d ed. 1969), § 24.35, *et seq.*

■ The municipality, as is indicated above, appears to interpret certain provisions in its zoning ordinance to require a landowner to obtain a certificate of occupancy from the building inspector whenever there is a change of tenant, even though there be no attendant change of use. A certificate of occupancy is a tangible manifestation that property has been improved and is being used in conformity to applicable municipal ordinances. *Honigfeld v. Byrnes,* 14 *N. J.* 600, 608 (1954); *Union County v. Benesch,* 98 *N. J. Super.* 167, 177 (Law Div. 1967); mod. 103 *N. J. Super.* 119 (App. Div. 1968). Certain occasions have been identified as justifying the requirement of an occupancy permit: (1) the completion of a building — the purpose being to confirm that it has been constructed in accordance with the building code, the building permit and any other applicable municipal regulation; (2) the alteration of a building — the purpose being the same as in (1) above; (3) the use of vacant and hitherto unused land — the purpose being to insure that the intended use conforms to the zoning ordinance and any other pertinent regulation; (4) any change of use — whether the land be improved or not — the purpose being as last stated. 2 *Anderson, American Law of Zoning* § 13.03 at 547 (1968). The employment of certificates of occupancy as legitimate tools of land use and subdivision control was very ably discussed by Judge Lane, speaking for the Appellate Division, in *J. D. Land Corp. v. Allen,* 114 *N. J. Super.* 503, 510–11 (1971). The Legislature has recently enacted an important statute, the State Uniform Construction Code Act, L. 1975, c. 217, *N. J. S. A.* 52:27D–119 *et seq.,* which contemplates the use of certificates of occupancy in some of the instances enumerated above. *N. J. S. A.* 52:27D–133. It has also been brought to our attention that some municipalities require a purchaser of property to secure such a certificate before going into possession, the application affording the building inspector an opportunity to examine the property in order to assure that all municipal regulations and requirements are being met. Perhaps the requirement

in the Montvale ordinance requiring the issuance of a certificate of occupancy whenever there is a change of tenant has the same purpose in view. There may be, or there may later develop, other occasions when such a certificate will serve a useful and valid end in land use control.

The Montvale regulation with respect to the issuance of certificates of occupancy was not here specifically challenged. We refrain from ruling upon the extent of its application or validity, as neither question has been briefed or argued.[2]

For the reasons herein expressed the judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD and SCHREIBER and Judge CONFORD—7.

*For reversal*—None.

---

[2]Article XIV, § 128-48 of the Montvale Ordinance reads as follows:

Upon written request from the owner, the Building Inspector shall issue a certificate of occupancy for any building or premises existing at the time of the passage of this ordinance, certifying, after inspection, the use made of the building or premises and .whether such conforms with the provisions of this ordinance.

By resort to such a provision the owner of property which becomes non-conforming by enactment of an ordinance is able to secure a certificate from the municipality confirming and describing its non-conforming status. Both landowner and municipality may thereafter benefit from thus memorializing the existence and terms of the non-conforming use. See 2 *Rathkopf, The Law of Zoning and Planning*, 55–22 (1972).